(No. 20215.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DAVID C. ROCKOLA, Plaintiff in Error.

*Opinion filed October 23, 1931.*

Louis P. Piquett, John Owen, and George Sprenger, (Wm. Scott Stewart, of counsel,) for plaintiff in error.

Oscar E. Carlstrom, Attorney General, John A. Swanson, State's Attorney, J. J. Neiger, and James B. Searcy, (Henry T. Chace, Jr., Edward E. Wilson, John Holman, Henry E. Ayers, and Grenville Beardsley, of counsel,) for the People.

Mr. Chief Justice Stone delivered the opinion of the court:

Plaintiff in error was a witness in the case of People *vs.* James N. O'Brien, who was charged with bribing one Frank J. Beran, custodian of lost property of the city of Chicago. The case was on trial in the criminal court of

Cook county and Rockola had been called to the witness stand. He refused to answer questions put to him, on the ground that his answers would tend to incriminate him. The State's attorney thereupon filed with the court trying the cause a petition setting out that Rockola was a material and necessary witness to prove the allegations of the indictment against O'Brien and had stated to the assistant State's attorneys that he was advised and assisted by O'Brien to make, and did make, certain payments to Beran to induce the latter to perform the duties of his office otherwise than is required by law and to cause and induce him to wrongfully permit a large number of slot machines to be removed from custody and to be delivered to Rockola, as agent of O'Brien. The petition also states that Rockola had testified in detail concerning those matters before the grand jury at a previous term of court and thereafter testified in open court in the case of People vs. Beran, in which Beran was charged with and convicted of bribery. The petition sets out in detail the statements made and testified to by Rockola and averred that no prosecution or proceedings for any violation of law growing out of his actions was pending against Rockola. The petition further averred that under section 35 (par. 82) of chapter 38 the court was authorized to grant immunity to Rockola from prosecution for all such matters as he might be required to testify to in the case then on trial against O'Brien. It also averred that unless Rockola be compelled to testify a miscarriage of justice would result. The prayer of the petition was that the court enter an order commanding Rockola to answer all questions relevant and material to the issue in the case against O'Brien and that an order be entered releasing him from all liability to prosecution and punishment for any matter to which he should be required to testify. On presentation of the petition to the court there was a hearing thereon, and the court on the same day entered an order finding that the court had jurisdiction of the subject mat-

ter and of Rockola, ordering Rockola to answer any question relevant and material to the issue in the case against O'Brien and releasing him "from all liability to be prosecuted or punished on account of any matter to which he may be required to testify." Thereupon, on the same day, Rockola was recalled as a witness in open court. He was reminded by the court that he was still under oath. The order was read to him, and he stated that he understood it. Twenty-eight questions were put to him, two of which he answered but refused to answer the others, claiming a constitutional privilege. As each question was asked and Rockola refused to answer, the court ruled, "The court directs you to answer," to which Rockola replied that he was declining to answer on the ground that his answer might incriminate him and was standing on his constitutional rights. The court thereupon entered an order which recited the whole proceeding, including apt reference to the petition, the order granting immunity, the questions, objections thereto, rulings on such objections, and answers of Rockola, and found Rockola guilty of contempt of court and sentenced him to six months in the county jail of Cook county. The order also recites that the conduct of Rockola took place in open court and was such as tended to impede and embarrass the court in the administration of justice, and that he was guilty of direct contempt.

Numerous grounds of error are assigned, the principal ones being that the questions propounded had no relation to the charge of bribery and the grant of immunity did not release Rockola from liability to be prosecuted concerning crimes which might be disclosed by his answers, and his refusal to answer was therefore not contemptuous; that the questions asked, being incompetent, irrelevant and immaterial, could not be made the basis of contempt for refusal to answer them; that the indictment in the case failed to charge a crime, and that the order finding Rockola guilty was void as lacking jurisdiction.

The constitutional guaranties underlying the right of one to be saved from giving evidence against himself, and the rules governing immunity granted under section 35 of chapter 38 of the statute, have been so many times discussed by this court that it is unnecessary to re-state those principles. In *People* v. *Boyle,* 312 Ill. 586, the subject was discussed at length and the rule there laid down. Unless protected by an authorized immunity order no witness can be required to give testimony which either directly or indirectly tends to incriminate him or to form a link in a chain of circumstances that might result in punishment for crime. The rule was also announced in *People* v. *Boyle, supra,* that the witness, by reason of circumstances apparent to him though not to anyone else, may have reasonable ground to apprehend danger from his answer, and that latitude is given the witness in judging for himself the effect of any particular question. These rules are so thoroughly settled in this and other States that citation of authorities is unnecessary. It was because of this constitutional right and because of the inherent difficulty in procuring evidence in bribery cases that section 35 of chapter 38 was enacted. In order that such a statute be valid it must be as broad as the constitutional guaranty, since it must provide a complete substitute for the guaranty that no witness shall be compelled to give evidence against himself. While the People may not ask questions of a witness calling for self-incriminating answers which do not show some relation to the bribery charge being tried or investigated, if such questions are so related the order granting him immunity is a complete protection to the witness, and he is not excused from answering the question because his answer may furnish a link in the chain of evidence against him for some other or different offense. The order of immunity protects him. *People* v. *Boyle, supra.*

There is much argument in the briefs about the right of a witness to refuse to answer, and numerous cases are cited which have to do with the constitutional right of the

witness in the absence of a valid order of the court granting immunity. In *People* v. *Rockola,* 339 Ill. 474, this same plaintiff in error was found guilty of contempt for refusing to answer questions on the trial of O'Brien on a charge of conspiracy to commit bribery, and the judgment against Rockola was by this court reversed for the reason that power in the court to grant immunity to a witness under section 35 of chapter 38 of the statute does not extend to the crime of conspiracy to commit bribery. The constitutional guaranty pertaining to the right of a witness to refuse to answer on the ground of self-incrimination where the charge being investigated is bribery is superseded in this State by a valid order granting him complete immunity. The order being valid, the witness has no more right to refuse to answer than he would have if his answers did not incriminate him. The immunity order protects him and is a complete substitute for his constitutional guaranty. It is not the purpose of the constitution to save a witness from embarrassment, disgrace or opprobrium arising out of the exposure of a crime, and the fact that his answers may tend to degrade him does not permit him to refuse to testify. The protection of the constitution, and likewise of its substitute, the immunity order, is against punishment. Constitutional privilege is not for the purpose of concealing blemishes on the character of the witness but to protect him from being compelled to give evidence which might lead to his conviction of a criminal offense. (*People* v. *Boyle, supra; Lamson* v. *Boyden,* 160 Ill. 613; *Councilman* v. *Hitchcock,* 142 U. S. 547.) Nor does the fact that the questions asked may relate to another offense not being tried or investigated furnish an excuse for refusal to answer if it can be seen that such questions also relate to the charge of bribery on trial or under investigation. (*People* v. *Boyle, supra.*) Twenty-eight questions were asked Rockola. Each was put to him separately and he was ordered by the court to answer it. Twenty-six of these he refused to answer. Among them are the following:

(1) "Were you at any time during the years 1927 and 1928 engaged in the business of operating slot machines in the city of Chicago in connection with an arrangement with the defendant, James Neil O'Brien?"

(2) "During the years 1927 and 1928 did you receive any moneys collected by employees of yours from slot machines placed in operation by your employees under your direction?"

(3) "Did you pay any moneys to James Neil O'Brien, defendant in this case, received by you from employees of yours collected from machines that you had placed in operation in Chicago?"

(4) "Did you on any occasion on or about the 13th of June, 1928, accompanied by an employee named Grotts of yours, go to the basement of the city hall and into the vault assigned to the custodian of lost and stolen property and there remove from that vault slot machines and place upon a truck and deliver to your factory, then located on Sixty-seventh street, city of Chicago?"

(5) "Did you have a conversation with the defendant, James N. O'Brien, in which he told you to go to the custodian of lost and stolen property in the city of Chicago and see Frank?"

(6) "Did you on any occasion go to the office of Frank Beran, the custodian of lost and stolen property in the city of Chicago and of the police department of the city of Chicago, and lay upon his desk an envelope containing money— United States currency?"

(7) "Did you have a conversation on or about the first part of June, 1928, with the defendant, James N. O'Brien, in which he told you to pay a certain sum of money to Frank J. Beran, custodian of lost and stolen property of the police department of the city of Chicago, as a bribe or for any other purpose?"

(8) "Did the defendant, James N. O'Brien, on any occasion direct you to pay to Frank Beran, custodian of lost

and stolen property of the police department, any sum of money as a bribe for the receipt of slot machines taken from his custody?"

(9) "Did you during the month of April, 1928, have a conversation with the defendant, James Neil O'Brien, in reference to the seizure of slot machines by Captain Condon and his officers in the police district presided over by Captain Condon in the city of Chicago?"

(10) "During the period between December 1, 1927, and June 14, 1928, did you make any reports of moneys paid out by you to Frank Beran, custodian of lost and stolen property of the police department, to the defendant, James Neil O'Brien?"

(11) "Did you have a conversation with the defendant, James Neil O'Brien, in which he advised you that you would be able to get back slot machines that you had placed in operation and which were taken from the thirty-sixth police station by Captain Condon and his men or officers and delivered to the custodian's office—custodian of lost and stolen property in the police department?"

(12) "Did you at any time during the period between December 1, 1927, and June 14, 1928, have a discussion or a talk with Frank Beran, custodian of lost and stolen property of the police department, city of Chicago, in which you mentioned the name of the defendant, James Neil O'Brien?"

(13) "Did you have any slot machines, vending machines, in operation in the Hudson avenue police district No. 36, presided over by Captain Condon, in the month of April, 1928?"

(14) "Did you on April 11, 1928, pay any money or leave any money in an envelope in the office of Frank Beran, custodian of lost and stolen property of the police department of the city of Chicago?"

(15) "Referring to the following dates, May 11, 1928, and June 14, 1928, did you hand any money to Frank Be-

ran, custodian of lost and stolen property of the police department of the city of Chicago?"

(16) "Did you on the same dates, May 28, 1928, and June 14, 1928, leave an envelope with money therein, United States money, in the office of Frank Beran, custodian of lost and stolen property of the police department of the city of Chicago?"

(17) "Do you know John Zobus, an employee or an officer of the police department of the city of Chicago during the years of 1927 and 1928, detailed at the office of the custodian of lost and stolen property of the police department?"

(18) "When and where did you first see him?"

(19) "During the period between December 1, 1927, and June 14, 1928, were you on any occasion in the vault of the custodian of lost and stolen property located in the basement of the city hall of the city of Chicago?"

(20) "On or about April 11, 1928, did James N. O'Brien direct you to pay any money to Frank J. Beran, custodian of lost and stolen property of the department of police of the city of Chicago?"

(21) "On or about June 14, 1928, did James N. O'Brien direct you to pay any money to Frank J. Beran, custodian of lost and stolen property of the department of police of the city of Chicago?"

(22) "I show you People's exhibit '1.' Will you look at it and observe the markings on it? Have you ever seen this exhibit before?"

(23) "Directing your attention to April 21, 1929, were you present on that day in your place of business on Seventy-sixth street, in the city of Chicago, when Captain William H. Schoemaker, myself and a court reporter, Frank A. Sheeder, made those marks that you see appearing on this exhibit, as follows: 'W. H. S.', 'H. E. A.' and 'F. A. S.', with the figures '4/21/29' stamped thereon?"

36

(24) "I show you State's exhibit '6' for identification, the following appearing upon the face of the exhibit: 'Available Express & Van Company, D. Rockola,' under date of June, and direct your attention to the date appearing thereon, June 13, 1928, and the following entry: 'Three men, city hall, 4:45 to 7:00, charge $12.50.' Did you ever see that bill before?"

Rockola's counsel objected to the questions on the ground that they were incompetent, irrelevant and immaterial. As to each of them Rockola stated that he declined to answer on the ground that it might incriminate him and that he stood on his constitutional rights. Applying the rule laid down in the *Boyle case* that the People may not ask questions that do not show any relation to the bribery charge being tried or investigated, it is apparent that question 2 related only remotely, if at all, to the bribery charge. The same is true of question 13, which related to slot machines in operation in the Hudson avenue police district by the witness. Question 9 asked Rockola whether during the month of April, 1928, he had a conversation with defendant, O'Brien, then on trial, with reference to the seizure of slot machines by Captain Condon and his officers. While it is not apparent that this question related directly to the bribery charge, the State is not limited in the charge of bribery to proof of a single act. In this case O'Brien was charged with indirectly bribing Beran. Bribery is seldom an isolated act, as theft or the like. It is frequently a progression of steps, all of which are material to the end sought, and it is competent for the State to prove acts leading up to the bribery though such acts show a conspiracy. It frequently occurs that the direct testimony on the specific act of bribery charged occupies but a trifling space in the record, while the greater portion of the evidence goes to establish the existence of a conspiracy between or among the accused, or the accused and others, to bring about

the bribery. Such evidence is competent though the indictment is for bribery and not for conspiracy. (*People* v. *Halpin,* 276 Ill. 363.) In *People* v. *McCann,* 247 Ill. 130, it was held proper to prove the source from which the bribe-giver received the money paid in pursuance of the bribery. In *People* v. *Nusbaum,* 326 Ill. 518, and *People* v. *Looney,* 324 id. 375, it was held that all the ramifications of a conspiracy leading up to the commission of the offense charged may be proved whether the indictment pleads a conspiracy or not. So it will be seen that the ninth question, relating to a conversation with the defendant, O'Brien, concerning the seizure of certain slot machines, may well have been competent as relating to the subject matter of the trial against O'Brien. A mere reading of the other questions herein set out discloses that they bore a direct relation to the charge of bribery, and this objection of plaintiff in error cannot be sustained.

It is also contended that the State was confined to proof of one payment of money to Beran and that questions relating to other instances of the payment of money by the witness were not competent. The argument is that the offense against O'Brien was not pleaded under a *videlicet,* and the People could therefore prove the offense of bribery against O'Brien only as of the date set out in the indictment. This objection is utterly without merit. This court has frequently held that while every indictment must bear date within the time fixed by law for its prosecution, yet, unless the allegation of a specified time is an essential ingredient of the offense, proof that the offense was committed at any time prior to the filing of the indictment and within the period prescribed by the Statute of Limitations is sufficient. (*People* v. *Dore,* 339 Ill. 415; *People* v. *Kircher,* 333 id. 200; *Singer* v. *Hutchinson,* 183 id. 606.) It may be further observed that had this been a defense it was such as was open to the defendant, O'Brien, only, and not to Rockola.

It is also earnestly argued that since some questions were asked which did not bear any relation to the crime being tried Rockola was excused from answering all of them, and *People* v. *Boyle, supra,* and *People* v. *Newmark,* 312 Ill. 625, are cited in support of that argument. In those cases the questions were presented to the witness as a series. In the *Boyle case* the order directed the witness Boyle to go before the grand jury and answer a certain list of questions. As there pointed out, Boyle was given no opportunity to answer such as he could be required to answer and concerning which he would be protected by the immunity order, and it was held error to require him to answer the series of questions asked of him and to adjudge him guilty of contempt for a refusal so to do. The same situation does not exist here. Each question was put to Rockola in open court, and upon his refusal to answer he was specifically directed by the court to answer but persisted in his refusal. It would be an undue limitation on the inherent power of courts to punish by contempt a willful attempt to frustrate the administration of justice, to say that because one or more questions separately put to a witness were not such as he should be required, under the immunity order, to answer, he cannot be adjudged guilty of contempt for his refusal to answer any. It is not the purpose of the constitution or statute that courts shall on inquiries of this kind tread so narrow a path nor is it essential to the protection of any right of the witness under a valid immunity order. But the argument is that there was but one judgment for contempt, and since the record shows that the court found Rockola guilty for refusal to answer the questions asked, it demonstrates that the court's judgment was based, at least in part, on erroneous rulings. The judgment in contempt was based on Rockola's refusal to answer questions which the law required him to answer. The punishment was for that conduct. While if it appeared from the record that by reason of the consideration of

matters not proper to be considered the court fixed an unreasonable and excessive punishment such judgment would not be allowed to stand, (*People* v. *Rongetti,* 344 Ill. 107,) yet unless it does so appear this court would not be justified in disturbing the judgment. There is no evidence here that the punishment was excessive. It may well have been that the refusal of Rockola to testify caused the acquittal of O'Brien, the defendant. To say that because of a right of silence on the part of Rockola as to certain questions he could not be punished for his refusal to answer those he should answer, would be to render courts impotent to punish a silence which willfully thwarts the administration of justice and would place such refusal to obey the law above the power of the court to enforce the law. Such a situation is neither demanded by the rights of the witness nor permitted in a contemplation of the administration of justice.

It is also argued that the indictment in this case was not sufficient to show a crime against O'Brien. This is not a matter of which the plaintiff in error can complain. There was a trial of a charge of bribery. Rockola had been granted immunity. So far as he or his rights are concerned he was protected. Immunity statutes are liberally construed, to the end that one who has testified under them shall not be later subjected to punishment for crimes disclosed. (*People* v. *Boyle, supra; People* v. *Sharp,* 107 N. Y. 427, 14 N. E. 319.) Rockola was entirely protected. This is all his constitutional guaranties demand.

It is argued that the witness has a right to determine whether his answer will incriminate him. As we have pointed out, in the absence of a valid and complete immunity order this is true; but the immunity statute contemplates that the witness' answers will be such as to incriminate him, and its purpose is to protect him against punishment for crimes disclosed by such answers. The cases cited by counsel for Rockola in support of the contention that he had a right to choose what questions he

should answer have no application where a valid and complete immunity order has been entered.

It is finally argued that the order of commitment is void, in that it lacks material findings relative to jurisdiction. In cases where a witness is adjudged guilty of contempt committed in open court the only record required to be made for review is the order of commitment, but the order should set out the facts constituting the offense so fully and certainly as to show that the court was authorized to make the order. (*People* v. *Hogan*, 256 Ill. 496.) The order in this case is unusually full, as is shown by the abstract of record filed by plaintiff in error. Its scope has been set out in this opinion. It meets all requirements as to jurisdiction. This objection cannot be sustained.

The record in this case is without substantial error, and the judgment will be affirmed. *Judgment affirmed.*