(No. 90623.—

MURISOL VELOZ RELSOLELO, Special Adm'r of the Estate of Jose Humberto Arellano, Deceased, *et al.*, Appellants, v. JOHN FISK, Appellee.

*Opinion filed November 21, 2001.*

Donald A. Shapiro and Charles Wallace, of Donald A. Shapiro, Ltd., of Chicago (John J. Cummings III and Frank C. Dudenhefer, Jr., of Cummings, Cummings & Dudenhefer, and Richard M. Martin, Jr., and John Arthur Eaves, of Eaves Law Firm, all of New Orleans, Louisiana, of counsel), for appellants.

Robert Marc Chemers, John J. Walsh III, Mark P. Standa and Scott L. Howie, of Pretzel & Stouffer, Chtrd., of Chicago, and Fred O. Goldberg, of Berger Singerman, of Ft. Lauderdale, Florida, for appellee.

JUSTICE KILBRIDE delivered the opinion of the court:

The primary issue presented by this appeal is whether article I, section 10, of the Illinois Constitution (Ill. Const. 1970, art. I, § 10) provides a privilege against self-incrimination based upon a person's fear of criminal prosecution by a foreign sovereign. Plaintiffs filed a class action on behalf of Venezuelan nationals or residents against defendant John Fisk (the sole defendant in the instant case), AT&T Corporation, AT&T subsidiaries and employees, and other American corporations, seeking recovery for personal injuries and wrongful deaths caused by a natural gas pipeline explosion in Venezuela. Following a motion to compel discovery, defendant refused to answer numerous questions, asserting his privilege against self-incrimination under the fifth amendment of the United States Constitution (U.S. Const., amend. V). Defendant contended that his answers could subject him to criminal prosecution in Venezuela.

The circuit court granted plaintiffs' motion to compel.

While the court found that defendant harbored a reasonable fear that his testimony could be used against him and that he could be extradited to Venezuela, the court further found that *United States v. Balsys*, 524 U.S. 666, 141 L. Ed. 2d 575, 118 S. Ct. 2218 (1998), foreclosed defendant's reliance on the fifth amendment and article I, section 10, of the Illinois Constitution. The appellate court reversed, finding that the privilege against self-incrimination provided by article I, section 10, of the Illinois Constitution is broader than that of its federal counterpart and protected defendant, who feared his testimony would be used in a prosecution by another sovereign. 317 Ill. App. 3d 798, 804.

We granted plaintiffs' petition for leave to appeal. 177 Ill. 2d R. 315. On appeal to this court, plaintiffs primarily argue that (1) the circuit court erred in finding that defendant was subject to extradition to Venezuela; and (2) the lower courts' decisions are unclear as to whether defendant can be compelled to testify about third parties and their conduct. Plaintiffs fail to raise the issue of whether the appellate court properly reversed the trial court by interpreting the scope of the Illinois Constitution's privilege against self-incrimination to extend to fear of foreign prosecutions. The issue was, however, adequately briefed below. We therefore consider it (see *People ex rel. Chicago Bar Ass'n v. State Board of Elections*, 136 Ill. 2d 513, 523 (1990) (we may consider issues of constitutional magnitude *sua sponte*) and hold that defendant cannot invoke the article I, section 10, privilege against self-incrimination based on a fear of prosecution in a foreign jurisdiction. As a result, we need not reach the remaining issues.

## BACKGROUND

Plaintiffs allege that, in September 1993, defendant worked as a project manager for a company that was overseeing the installation of an underground fiber-optic

telephone cable in Venezuela. While the project was underway, a rotoexcavator operated by a subcontractor came into contact with a natural gas pipeline near a Venezuelan highway. Plaintiffs seek recovery for the multiple injuries and deaths caused by the resulting explosion.

After the incident, Venezuelan authorities filed criminal charges against defendant for *incendio in forma culposa*[1] and issued a warrant for his arrest. Likewise, a Venezuelan citizen filed criminal charges against defendant, also for the offense of *incendio in forma culposa*.[2] Defendant has since returned to the United States and has not answered the criminal charges.

Numerous civil lawsuits also ensued, including the one *sub judice*. In the instant case, plaintiffs pursued discovery through interrogatories and a deposition. Throughout the discovery process, defendant refused to answer most of the interrogatories and questions posed during deposition, expressly relying upon his fifth amendment privilege against self-incrimination. Specifically, defendant refused to answer questions relating to his job title, duties, and involvement in the project. Plaintiffs filed a motion to compel. In opposition, defendant

---

[1]According to the record, under Venezuelan law, *incendio en forma culposa* is the rough equivalent of negligent arson. *Incendio en forma culposa* is codified in article 357 of the Venezuelan Criminal Code. Article 357 provides as follows:

"He who, by acting imprudently or with negligence, or with inexperience in his trade, or through failure to observe regulations or orders, has caused any fire, explosion, flood, or shipwreck, or caused a dangerous situation or disaster, shall be punished with a prison term of three to fifteen months. In addition, if these acts endanger lives, the prison term shall be between three and thirty months, and if it results in death, the prison term shall be between one and ten years."

[2]Evidence in the record indicates that Venezuela allows private citizens to initiate criminal proceedings.

contended that his testimony could be used against him in conjunction with the criminal charges pending in Venezuela, that he was charged with an extraditable offense, and that he had a reasonable fear of self-incrimination if he testified.

The trial court originally agreed with defendant, finding that he had a reasonable fear of prosecution and extradition, and that the questions posed to him fell within the parameters of the privilege. While holding that defendant could assert the privilege, the trial court did not cite its basis for believing defendant possessed a reasonable fear of foreign prosecution. Plaintiffs later sought reconsideration of the trial court's ruling based upon the United States Supreme Court's decision in *Balsys*. In *Balsys*, 524 U.S. at 700, 141 L. Ed 2d at 601, 118 S. Ct. at 2236, the Supreme Court held that a witness cannot assert his fifth amendment right against self-incrimination out of fear of foreign prosecution. Defendant countered that the privilege could nevertheless be exercised through article I, section 10, of the Illinois Constitution. The trial court rejected defendant's argument and granted the motion to compel, finding that, there being no case law directly on point in Illinois, the rationale in *Balsys* should control. Defendant made known to the trial court his plan to continue to assert the privilege. In order to expedite the appeal (see 155 Ill. 2d R. 304(b)(5)), the circuit court entered an order holding him in contempt and fining him $10.

The appellate court reversed, finding that article I, section 10, of the Illinois Constitution provides an independent source for the privilege against self-incrimination. The court noted that Illinois does not always interpret article I, section 10, in "lockstep" with its federal analogue. In fact, the court observed, in appropriate circumstances, the Illinois Constitution's guarantees may be interpreted more broadly than those

in the federal constitution. See *People v. McCauley*, 163 Ill. 2d 414 (1994) (rendering a more expansive reading of article 1, section 10, right to counsel than the Supreme Court's interpretation of the fifth amendment right to counsel as articulated in *Moran v. Burbine*, 475 U.S. 412, 89 L. Ed. 2d 410, 106 S. Ct. 1135 (1986) (holding that police do not have to inform a criminal defendant that an attorney is waiting to speak to them in order to obtain a valid waiver of fifth amendment rights)); but see *People v. Perry*, 147 Ill. 2d 430 (1992) (interpreting article I, section 10, lockstep with the fifth amendment interpretation in *McNeil v. Wisconsin*, 501 U.S. 171, 115 L. Ed. 2d 158, 111 S. Ct. 2204 (1991) (holding that request and appointment of counsel for a defendant under the sixth amendment did not constitute request of counsel for fifth amendment purposes when the police chose to interrogate a defendant on uncharged offenses)). After considering the policies underlying this state's privilege against self-incrimination, the appellate court determined that the protections of article I, section 10, extend to defendants having a reasonable apprehension of foreign prosecution. 317 Ill. App. 3d at 804. We now reverse.

## ANALYSIS

In finding there was no privilege against self-incrimination in regard to a foreign prosecution embodied in article I, section 10, the trial court expressly relied on, and the appellate court expressly rejected, *Balsys*. In particular, the trial court stated:

"Concerning *United States versus Balsys* \*\*\*

In my opinion it is unequivocal that the fear of foreign prosecution does not form a basis to assert the Fifth Amendment privilege against self-incrimination.
\*\*\*

\*\*\* The case law is clear \*\*\* that the Illinois Supreme Court is not bound by [the] federal interpretation of self-incrimination issues.

Defendant Fisk has not provided this Court with any

case law which supports [his] interpretation of the Illinois Constitution as protecting a person from testifying while [he is] in fear of foreign prosecution."

In *Balsys*, the respondent, Aloyzas Balsys, was a resident alien who was deposed in a deportation proceeding instituted by the office of special investigations of the Department of Justice's criminal division, a unit having special responsibility for matters relating to suspected Nazi war criminals. Balsys asserted his federal fifth amendment privilege against self-incrimination when asked to testify about his wartime activities between 1940 and 1944 and his immigration to the United States. *Balsys*, 524 U.S. at 670, 141 L. Ed. 2d at 583, 118 S. Ct. at 2221. His invocation of the privilege was premised upon a fear of prosecution by such foreign nations as Lithuania, Israel, and Germany. *Balsys*, 524 U.S. at 670, 141 L. Ed. 2d at 583, 118 S. Ct. at 2221. The Supreme Court held that the respondent's fear of foreign prosecution was beyond the scope of the fifth amendment's self-incrimination clause. *Balsys*, 524 U.S. at 700, 141 L. Ed. 2d at 601, 118 S. Ct. at 2236.

The Court reasoned that the privilege, like all of the other guarantees embodied within the fifth amendment such as grand jury proceedings, defense against double jeopardy, due process, and compensation for property taking, is only implicated by action of the government that it binds. *Balsys*, 524 U.S. at 673, 141 L. Ed. 2d at 585, 118 S. Ct. at 2223. Thus, according to the Court, the privilege may be asserted when the defendant reasonably fears "prosecution by the government whose power the Clause limits, but not otherwise." *Balsys*, 524 U.S. at 673-74, 141 L. Ed. 2d at 585-86, 118 S. Ct. at 2223. The Court further relied on the fact that a grant of full immunity by the government compelling the witness to testify is equivalent to the protection furnished by the privilege. *Balsys*, 524 U.S. at 677, 141 L. Ed. 2d at 587,

118 S. Ct. at 2225. As a result, the sovereign seeking the testimony has the choice to exchange the witness' privilege against self-incrimination for immunity from prosecutorial use of such compelled inculpatory testimony. *Balsys*, 524 U.S. at 682, 141 L. Ed. 2d at 590, 118 S. Ct. at 2227. In other words, the restraints imposed by the fifth amendment do not furnish personal testimonial inviolability, but rather a conditional protection of testimonial privacy, subject to the immunity doctrine. *Balsys*, 524 U.S. at 692-93, 141 L. Ed. 2d at 597, 118 S. Ct. at 2232. The policies and purposes behind the privilege would therefore be frustrated if the privilege were extended to fear of foreign prosecutions, concluded the Court, because domestic courts are unable to enforce grants of immunity abroad. *Balsys*, 524 U.S. at 693, 141 L. Ed. 2d at 597, 118 S. Ct. at 2232.

We acknowledge, as did the trial court and the appellate court in this matter, that we are not bound to interpret our own constitutional provisions lockstep with the Supreme Court's interpretation of the federal constitution. *People v. Mitchell*, 165 Ill. 2d 211, 217 (1995). Indeed, we have often stated that this court may interpret provisions of our state constitution to provide broader protections than their federal constitutional counterparts. See *McCauley*, 163 Ill. 2d at 426; *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381, 390 (1992); *People v. Perry*, 147 Ill. 2d 430, 436 (1992); *People v. Tisler*, 103 Ill. 2d 226, 243 (1984). We have, however, crafted certain limitations that define the exercise of this right. *Mitchell*, 165 Ill. 2d at 217. Most importantly, we have often stated that " '[w]e must find in the language of our constitution, or in the debates and the committee reports of the constitutional convention, something which will indicate that the provisions of our constitution are intended to be construed differently than are similar provisions in the Federal constitution.' " *Mitch-*

*ell*, 165 Ill. 2d at 217, quoting *Tisler*, 103 Ill. 2d at 245; see, *e.g.*, *People v. McCauley*, 163 Ill. 2d 414 (1994) (rendering a more expansive reading of article I, section 10, right to counsel than the Supreme Court's interpretation of the fifth amendment right to counsel as articulated in *Moran v. Burbine*, 475 U.S. 412, 89 L. Ed. 2d 410, 106 S. Ct. 1135 (1986)); *Tisler*, 103 Ill. 2d at 245 (finding no basis to implement a broader construction of our search and seizure provision than that used by the federal judiciary to interpret the fourth amendment).

In this case there is absolutely no indication in either the Record of Proceedings or the Committee on the Bill of Rights of the Constitutional Convention that the drafters intended the Illinois privilege to differ from the federal counterpart as regarding fear of foreign prosecution. See 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1376-80, 1390; 6 Record of Proceedings, Sixth Illinois Constitutional Convention 43-44. Nor is there any evidence in the language of article I, section 10, that points to an intention to construe that provision differently than the federal judiciary interprets the fifth amendment in this context. The language of the provisions is virtually identical. Compare Ill. Const. 1970, art. I, § 10 ("No person shall be compelled in a criminal case to give evidence against himself"), with U.S. Const., amend. V ("No person *** shall be compelled in any criminal case to be a witness against himself"). Thus, the substantial grounds necessary for this court to depart from the federal interpretation of the self-incrimination clause are not present in this case. See *Mitchell*, 165 Ill. 2d at 219; *Tisler*, 103 Ill. 2d at 245.

Such grounds were, however, present in *McCauley* where the article I, section 10, right to counsel was considered by this court. The *McCauley* defendant was brought to the police station for questioning in connection with a murder. He was advised of his *Miranda* rights

and did not request an attorney. Unbeknownst to the defendant, however, his family had retained an attorney for him. The defendant's attorney phoned the police station and ultimately went there, requesting to speak with the defendant. The police officers refused the attorney access to the defendant and also failed to inform the defendant that his attorney was present at the station and seeking to consult with him. The defendant subsequently gave an inculpatory statement to the police in response to their questioning. The trial court granted the defendant's motion to suppress the statement. *McCauley*, 163 Ill. 2d at 418-20.

We affirmed the suppression of the defendant's statement on the ground that the conduct of the police violated the defendant's rights under the Illinois Constitution. In so doing, we declined to adopt the United States Supreme Court decision in *Moran v. Burbine*, 475 U.S. 412, 89 L. Ed. 2d 410, 106 S. Ct. 1135 (1986). In *Burbine*, the court rejected the contention that police conduct, such as that at issue in *McCauley*, violated a defendant's right to counsel under the fifth amendment to the United States Constitution. *Burbine*, 475 U.S. at 423, 89 L. Ed. 2d at 422, 106 S. Ct. at 1142. Nevertheless, this court in *McCauley* held that such conduct violated the defendant's right to counsel under article I, section 10, of the Illinois Constitution of 1970. We thus concluded that the right to counsel under the Illinois Constitution should be construed more broadly than its federal counterpart was construed in *Burbine*. *McCauley*, 163 Ill. 2d at 423-24.

While construing the right to counsel under article I, section 10, in *McCauley*, this court indicated that the status of that fifth amendment right was changed dramatically by the Supreme Court's decision in *Burbine*. In particular reference to the *Burbine* decision, we stated:

"The day is long past in Illinois \*\*\* where attorneys must shout legal advice to their clients, held in custody, through the jailhouse door. \*\*\* The incommunicado interrogation and surrounding coercive environment likely to result from [the] objectionable practice [of preventing a custodial suspect from speaking to his attorney who is immediately available] is exactly the sort of scenario previously condemned by the United States Supreme Court in *Escobedo* and *Miranda*. See *Miranda v. Arizona* (1966), 384 U.S. 436, 457, 16 L. Ed. 2d 694, 714, 86 S. Ct. 1602, 1619 ('[t]his atmosphere carries its own badge of intimidation'); *Escobedo v. Illinois* (1964), 378 U.S. 478, 487, 12 L. Ed. 2d 977, 984, 84 S. Ct. 1758, 1763 ('it "would be highly incongruous if our system of justice permitted the district attorney, the lawyer representing the State, to extract a confession from the accused while his own lawyer, seeking to speak with him, was kept from him by the police" ')." *McCauley*, 163 Ill. 2d at 423-24.

This court specifically noted that the 1970 Illinois Constitutional Convention debates indicated that the delegates intended that article I, section 10, incorporate then-existing federal constitutional principles regarding incommunicado interrogation as represented by the *Escobedo* and *Miranda* decisions. *McCauley*, 163 Ill. 2d at 439-40. We also noted that a member of the Committee on the Bill of Rights, who had argued *Escobedo* before the Supreme Court, assured the convention at large that the committee had decided that " 'the *existing* state of the law would remain unchanged.' " (Emphasis added.) *McCauley*, 163 Ill. 2d at 440, quoting 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1377. In other words, the *McCauley* decision represents this court's refusal to allow this state's counterpart to the fifth amendment right to counsel to diminish the way the federal right had in *Burbine*. Rather than join the divergence regarding incommunicado interrogation undertaken by the federal judiciary in *Burbine*, this court decided in *McCauley* to stay true to the path begun in *Miranda* and *Escobedo*.

The case at hand provides no such substantial grounds for departing from the federal interpretation of the self-incrimination privilege. In this way, the instant case is more similar to *People v. Perry*, 147 Ill. 2d 430 (1992). In *Perry*, we had another occasion to decide whether to interpret article I, section 10, lockstep with its federal counterpart.

The *Perry* defendant requested an attorney while being arraigned on a murder charge and the circuit court appointed a public defender. The police, however, obtained a ''hold order'' to keep the defendant in jail for an additional day. The following day the officers interrogated the defendant and he gave an inculpatory statement. The trial court denied his motion to suppress the statement and the defendant was later convicted of murder. He appealed, arguing that the police violated his fifth amendment right to counsel and the appellate court reversed. *People v. Perry*, 205 Ill. App. 3d 655 (1990). Subsequently, the United States Supreme Court issued its decision in *McNeil v. Wisconsin*, 501 U.S. 171, 115 L. Ed. 2d 158, 111 S. Ct. 2204 (1991). In *McNeil*, the Court held that a defendant's invocation of his sixth amendment right to counsel in a judicial proceeding did not constitute invocation of his fifth amendment right to counsel under *Miranda* as to uncharged offenses. *McNeil*, 501 U.S. at 175-76, 115 L. Ed. 2d at 166-67, 111 S. Ct. at 2207-08.

The State appealed the appellate court's decision in *Perry* to this court, arguing that, in light of *McNeil*, the appellate court's decision was flawed. We agreed. However, defendant countered that his confession was void under article I, section 10, of the Illinois Constitution. We disagreed and stated in pertinent part as follows:

''In appropriate cases, this court certainly has the right and the obligation to interpret our State Constitution more liberally than similar provisions of the Federal Constitution. In this case, however, we find that the Supreme

> Court's analysis and conclusion in *McNeil* adequately safeguard the competing objectives of effective law enforcement and an individual's privilege against self-incrimination confronting us. Consequently, for the reasons set forth in *McNeil v. Wisconsin*, we find that defendant's privilege against self-incrimination was not violated under either the United States Constitution or the State of Illinois Constitution." *Perry*, 147 Ill. 2d at 436.

Thus, we found no grounds to depart from the Supreme Court's interpretation of a defendant's invocation of his fifth amendment right to counsel. Likewise, we are without a basis to stand apart from *Balsys* with regard to the fifth amendment privilege against self-incrimination in relation to fear of foreign prosecution.

Defendant nevertheless maintained below that this court's decisions in *People v. Boyle*, 312 Ill. 586 (1924), *People v. Rockola*, 346 Ill. 27 (1931), and *People v. Burkert*, 7 Ill. 2d 506 (1955), run counter to the rationale behind the *Balsys* decision. Specifically, according to defendant, *Balsys* represents a rebirth of the "same sovereign" principle used in self-incrimination cases that was rejected by this court in the *Boyle-Rockola-Burkert* line of cases. Defendant's argument misses the mark for at least two reasons.

First, the same sovereign doctrine with respect to fear of prosecution by a foreign government has never been specifically addressed by this court and was addressed for the first time by the Supreme Court in *Balsys*. See *Balsys*, 524 U.S. at 670, 141 L. Ed. 2d at 582, 118 S. Ct. at 2221-22 (noting the court had granted *certiorari* in cases raising this question twice before but did not reach the merits of the question in either case). Thus, the question presents a unique factual situation of constitutional magnitude not previously addressed by this court or the United States Supreme Court.

Second, of the three cases cited by defendant, only *Burkert* involved the issue of whether fear of prosecution

by another sovereign could be the basis to invoke the privilege against self-incrimination in Illinois. *Boyle* involved the propriety of a court order requiring the defendant in that case to answer questions outside the scope of the immunity order he had been granted. *Boyle*, 312 Ill. at 604-05. Likewise, *Rockola* simply dealt with the sufficiency of the immunity order granted to the defendant. *Rockola*, 346 Ill. at 39-40. In *Burkert*, on the other hand, we specifically held that a defendant could invoke a statutory privilege against self-incrimination found in the Illinois Witness Immunity Act (Ill. Rev. Stat. 1953, ch. 38, par. 580a) because answers to questions posed to him might incriminate him under federal law. This was so because the statute in question specifically provided that the court could not compel a witness to testify or give evidence if it reasonably appeared "that such testimony or evidence *** would subject such witness to an indictment, information or prosecution *** under the laws of *another State or of the United States.*" (Emphasis added.) Ill. Rev. Stat. 1953, ch. 38, par. 580a. Hence, the only Illinois case cited by defendants to have directly addressed the "same sovereign" principle was decided upon a statutory basis that specifically provided that fear of prosecution by another state or the federal government was sufficient to raise the privilege.

## CONCLUSION

For the above-stated reasons, we hold that article I, section 10, of the Illinois Constitution does not provide a person with a privilege against self-incrimination in regard to a potential criminal prosecution by a foreign sovereign. The judgment of the appellate court is therefore reversed and the judgment of the circuit court of Cook County is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*