DARRYL N. VEAZEY, Plaintiff-Appellant, v. LaSALLE TELECOMMUNICA-TIONS, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—02—0517

Opinion filed October 30, 2002.

Aron D. Robinson, of Chicago, for appellant.

D'Ancona & Pflaum, L.L.C., of Chicago (Victoria P. Hallock and Tracy M. Billows, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Darryl N. Veazey, filed a three-count complaint against the defendant, LaSalle Telecommunications, Inc. (LaSalle), asserting causes of action for retaliatory discharge, civil conspiracy, and negligent spoliation of evidence. LaSalle moved to dismiss each of the counts pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 2000)). The circuit court granted LaSalle's motion, and the plaintiff filed a timely notice of appeal. For the reasons that follow, we affirm.

The plaintiff's complaint alleges as follows. The plaintiff was employed by LaSalle from 1989 until October 25, 1996. In September 1996, the plaintiff's immediate superior, Ralph Newcomb, received a threatening message on his voice mail. Several individuals for whom the message was played believed that the voice on the message was that of the plaintiff. The matter was reported to the police. Approximately one month later, a female caller left a message on Newcomb's voice mail threatening Newcomb's wife.

On October 22, 1996, the plaintiff was summoned to LaSalle's regional office and questioned regarding the threatening messages by Mike Mason, LaSalle's customer fulfillment manager, and Jack Burke, who was identified to the plaintiff as a "LaSalle troubleshooter." The plaintiff denied leaving any threatening messages on Newcomb's voice mail but was, nevertheless, ordered to read a transcript of the threatening message so that a recording of his voice could be made for comparison purposes. The plaintiff refused and was suspended from his job without pay.

The plaintiff next met with Mason and Burke on October 25, 1996, and was again ordered to provide a recording of his voice reading a transcript of the threatening message. When the plaintiff refused, his employment with LaSalle was terminated.

The plaintiff filed a three-count complaint against LaSalle. Count I is a claim for retaliatory discharge, asserting that the plaintiff was

fired "in retaliation for his invoking his rights against self[-] incrimination as protected by the Illinois and United States Constitutions." Count II is a claim for civil conspiracy, charging that Mason and Burke conspired to terminate the plaintiff because he "was Black and because he refused to leave incriminating voice mail messages." Count III is a claim for negligent spoliation of evidence, alleging that LaSalle has lost, misplaced or destroyed certain evidentiary materials, including the plaintiff's personnel file and microcassette recordings of the threatening voice mail messages left on Newcomb's voice mail, making it "more difficult for him [the plaintiff] to succeed in his litigation to recover the damages to which he is entitled."

LaSalle moved to dismiss each of the counts of the plaintiff's complaint for failure to state causes of action upon which relief might be granted. Specifically as to count I, LaSalle argued that the plaintiff failed to state a claim for retaliatory discharge because he had not alleged and could not allege that his termination was in violation of any clearly mandated public policy. In moving to dismiss count II, the plaintiff's civil conspiracy claim, LaSalle argued that it could not be held liable for conspiring with its own agents, Mason and Burke, as there can be no conspiracy between a principal and its agent. LaSalle further argued that the plaintiff could not recover against it in a common law action for an alleged conspiracy to violate his civil rights. As to count III, LaSalle argued that, since the plaintiff cannot recover against it on either count I or count II of his complaint, he cannot satisfy the causation element of an action for negligent spoliation of evidence.

The circuit court granted LaSalle's motion and dismissed all three counts of the plaintiff's complaint with prejudice. This appeal followed.

■ Because this matter was disposed of at the trial level on the defendant's motion to dismiss pursuant to section 2—615 of the Code, the only question before this court is whether the dismissed counts state causes of action upon which relief can be granted. *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 504-05, 565 N.E.2d 654 (1990). The issue presented is one of law, and our review is *de novo*. *Metrick v. Chatz*, 266 Ill. App. 3d 649, 651-52, 639 N.E.2d 198 (1994).

■ In determining whether sufficient facts are stated in the complaint which, if established, could entitle the plaintiff to relief, we must take the well-pled facts in the complaint as true and draw all reasonable inferences from those facts that are favorable to the plaintiff. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 46-47, 566 N.E.2d 1365 (1991). However, conclusions of law or fact contained within the complaint will not be taken as true unless supported by specific factual allegations. *Ziemba*, 142 Ill. 2d at 47.

■ The tort of retaliatory discharge is an exception to the general rule that "at-will" employment is terminable at any time for any or no cause. *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 128, 421 N.E.2d 876 (1981). In order to recover upon a claim of retaliatory discharge, a plaintiff must establish that he was discharged in retaliation for his activities and that the discharge violated a clear mandate of public policy. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 160, 601 N.E.2d 720 (1992). In this case, the plaintiff has pled both that he was discharged from his employment with LaSalle and that his discharge was as a consequence of his activities, namely, refusing to read a transcript of the threatening message left on Newcomb's voice mail. The question is whether the facts as alleged establish that the plaintiff's discharge was in violation of a clear mandate of public policy.

The plaintiff argues that the public policy violated by his discharge is the protection of the privilege against self-incrimination guaranteed by both the fifth amendment to the United States Constitution (U.S. Const., amend. V) and article I, section 10, of the Illinois Constitution (Ill. Const. 1970, art. I, § 10). LaSalle argues that a voice exemplar, such as that requested of the plaintiff, is not a testimonial statement and, as such, neither the federal nor the state constitutional privilege against self-incrimination protects a person from being required to give one. LaSalle further asserts that the privilege against self-incrimination acts as a restraint upon the government only, not a limitation upon the activities of a private party.

■ As a preliminary matter, we will address the plaintiff's contention that his complaint does not allege that he was directed to give a voice exemplar. The term "exemplar" is defined as "one that serves as a model or example." Webster's Third New International Dictionary 795 (1993). Interpreted in the light most favorable to the plaintiff, the allegations of the complaint assert nothing more than the fact that the plaintiff was directed to "provide a tape recording of his voice reading the transcript of the message allegedly left" on Newcomb's voice mail so that LaSalle "could compare it to the threatening message left for Mr. Newcomb", "ostensibly for the purpose of determining whether or not *** [his] denial of involvement was truthful". The plaintiff asserts that, pursuant to voice recording standards adopted by the American Board of Recorded Evidence, a voice exemplar must be taken by trained professionals in a controlled setting in order to be valid for comparison purposes. We are not concerned with the question of whether the exemplar, if given, would have been valid. Rather, we need only consider whether the plaintiff alleged that LaSalle ordered him to give a voice exemplar for purposes of comparison. It is clear from the plaintiff's complaint that he alleged precisely that.

■ LaSalle is correct in its assertion that the constitutional privilege against self-incrimination restricts only government conduct. See *D.L. Cromwell Investments, Inc. v. NASD Regulation, Inc.*, 279 F.3d 155, 160-61 (2d Cir. 2002) (to establish violation of defendant's fifth amendment right against self-incrimination, plaintiff must demonstrate that plaintiff's conduct constituted state action); *United States v. D.F.*, 115 F.3d 413, 420 (7th Cir. 1997) (any interrogation subject to strictures of fifth amendment must be at hands of government actor); *Nuzzo v. Northwest Airlines, Inc.*, 887 F. Supp. 28, 32 (D. Mass. 1995). As LaSalle's conduct did not constitute state action, the trial court properly dismissed count I of the plaintiff's complaint, in which he alleged that he had been discharged in retaliation for invoking his constitutional right against self-incrimination.

Even if the constitutional protection against self-incrimination could be said to apply to LaSalle's conduct, the plaintiff failed to state a cause of action for retaliatory discharge. The United States Supreme Court has held that the privilege against self-incrimination guaranteed by the fifth amendment to the United States Constitution protects an accused only from being compelled to testify against himself or otherwise provide the State with evidence of a testimonial or communicative nature. *Schmerber v. California*, 384 U.S. 757, 761, 16 L. Ed. 2d 908, 914, 86 S. Ct. 1826, 1830 (1966). However, the privilege offers no protection against one being compelled to speak for identification purposes. *Schmerber*, 384 U.S. at 764, 16 L. Ed. 2d at 916, 86 S. Ct. at 1832. Simply put, compelled production of a voice exemplar for identification or comparison purposes does not violate the fifth amendment. *United States v. Dionisio*, 410 U.S. 1, 5-8, 35 L. Ed. 2d 67, 74-76, 93 S. Ct. 764, 767-69 (1973); *United States v. Wade*, 388 U.S. 218, 222-23, 18 L. Ed. 2d 1149, 1154-55, 87 S. Ct. 1926, 1929-30 (1967); see also *People v. Davis*, 151 Ill. App. 3d 435, 502 N.E.2d 780 (1986).

Although not bound to interpret provisions in the Illinois Constitution in "lockstep" with the Supreme Court's interpretation of federal constitutional counterparts, the provisions of our state constitution will generally not be interpreted as providing broader protection than the federal constitution unless the language of our constitution or the debates and committee reports of the constitutional convention indicate an intention to do so. *People v. Mitchell*, 165 Ill. 2d 211, 217, 650 N.E.2d 1014 (1995). There is no evidence in either the language of article I, section 10, of the Illinois Constitution or the record of the proceedings of the constitutional convention that indicates that the drafters intended that the Illinois privilege against self-incrimination be construed differently than the Supreme Court has interpreted the same privilege contained in the fifth amendment to the federal

constitution. See *Relsolelo v. Fisk*, 198 Ill. 2d 142, 150, 760 N.E.2d 963 (2001); *People ex rel. Hanrahan v. Power*, 54 Ill. 2d 154, 295 N.E.2d 472 (1973).

The fact that the plaintiff has cited his "rights against self[-]incrimination as protected by the Illinois and United States Constitutions" as the public policy violated by his discharge does not of itself give rise to a claim for retaliatory discharge. "The test for determining if the complaint states a valid cause of action is whether the public policy clearly mandated by the cited provisions is violated by the plaintiff's discharge." *Barr v. Kelso-Burnett Co.*, 106 Ill. 2d 520, 527, 478 N.E.2d 1354 (1985). Since being compelled to give a voice exemplar does not violate the privilege against self-incrimination guaranteed by the fifth amendment to the United States Constitution or article I, section 10, of the Illinois Constitution, LaSalle's discharge of the plaintiff for refusing to give such an exemplar does not violate the public policy embodied in either constitutional provision.

Citing to *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 733 N.E.2d 835 (2000), the plaintiff also argues that his discharge violates public policy in another manner. In *Rodgers*, the court held that the discharge of an employee who is induced by his employer to participate in a criminal scheme devised for the purpose of providing grounds for the employee's termination violates public policy. Again arguing that the conditions under which LaSalle ordered him to provide a voice exemplar do not meet the above-referenced voice comparison standards, the plaintiff asserts that the statement could have been used to implicate him rather than simply as a comparison. It is true that the plaintiff alleged that he was not provided with any "security or assurances that any voice recording he would make could not be used by anyone claiming it was the original message left for Mr. Newcomb." The instant case is distinguishable from *Rodgers*, though, in that the plaintiff here made no allegation that LaSalle's agents were acting in furtherance of any scheme to induce him to commit a crime to justify his termination.

For the foregoing reasons, we conclude that count I of the plaintiff's complaint does not allege facts supporting a conclusion or inference that his discharge violated any clear mandate of public policy. As a consequence, we find that count I fails to state a cause of action for retaliatory discharge and was, therefore, properly dismissed by the trial court.

The plaintiff also challenges the trial court's dismissal of his action for civil conspiracy set forth in count II of his complaint. He argues that the trial court improperly found that Burke was LaSalle's agent and, based upon that finding, dismissed his civil conspiracy

claim, holding that a principal cannot conspire with its agent. See *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 24, 694 N.E.2d 565 (1998). The plaintiff also argues that, since he alleged that he was fired by reason of his race, the trial court erred in dismissing his civil conspiracy count on the basis of its finding that he had failed to state a claim for retaliatory discharge.

■ To state a claim for civil conspiracy, a plaintiff must plead that two or more persons intentionally combined for the agreed purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means. *Buckner*, 182 Ill. 2d at 23. However, the basis of a claim of civil conspiracy that may result in tort liability is not the mere combination of two or more persons, but the wrongful act alleged to have been done pursuant to the agreement. *Rodgers*, 315 Ill. App. 3d at 350.

■ Liberally construed, the plaintiff's civil conspiracy claim alleges that he was discharged both because he refused to give a voice exemplar and because of his race. As discussed above, however, the plaintiff's discharge for failing to give a voice exemplar cannot support a claim for retaliatory discharge and does not, therefore, constitute any wrongful act that can support a claim of civil conspiracy. See *Davis v. Times Mirror Magazines, Inc.*, 297 Ill. App. 3d 488, 499, 697 N.E.2d 380 (1998). We are left then with the issue of whether the plaintiff's allegation that LaSalle conspired to, and did, terminate his employment "because he was Black" can support a common law action for civil conspiracy.

■ The Illinois Human Rights Act (Act) (775 ILCS 5/1—101 *et seq.* (West 1996)) is a comprehensive scheme of remedies and administrative procedures for redress of civil rights violations. *Mein v. Masonite Corp.*, 109 Ill. 2d 1, 7, 485 N.E.2d 312 (1985). Section 2—102(A) of the Act provides that it is a civil rights violation for any employer to discharge an employee on the basis of "unlawful discrimination." 775 ILCS 5/2—102(A) (West 1996). The Act defines "unlawful discrimination" as discrimination against a person because of, *inter alia*, his race, color or national origin. 775 ILCS 5/1—103(Q) (West 1996).

■ Section 8—111(C) of the Act states: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8—111(C) (West 2000). Our supreme court has repeatedly held that the Act provides the exclusive source of redress for alleged civil rights violations, including employment discrimination claims. *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 322-23, 547 N.E.2d 437 (1989); *Mein*, 109 Ill. 2d at 7. If a common law action is in essence one that seeks redress for a "civil rights violation"

as defined in the Act, the circuit court lacks subject-matter jurisdiction to adjudicate the claim. *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 516, 687 N.E.2d 21 (1997). An absence of subject-matter jurisdiction cannot be waived by the parties and may be raised at any time (*Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 515, 639 N.E.2d 1273 (1994)), even *sua sponte* by a reviewing court (*People v. Capitol News, Inc.*, 137 Ill. 2d 162, 170, 560 N.E.2d 303 (1990)).

■ There can be no disputing the fact that the plaintiff's assertion that LaSalle, his employer, conspired to, and did, terminate his employment "because he was Black" alleges a civil rights violation within the meaning of the Act. As a consequence, no basis independent of the Act exists for imposing liability upon LaSalle predicated upon this charge, and the circuit court lacked jurisdiction to consider the claim. *Geise*, 159 Ill. 2d at 516-17.

Our analysis of this issue renders it unnecessary that we address the plaintiff's contention that the trial court improperly dismissed his civil conspiracy claim on the basis that Burke was LaSalle's agent. For the foregoing reasons, we conclude that count II of the plaintiff's complaint fails to state a cause of action for conspiracy predicated either upon a retaliatory discharge or a "civil rights violation." See *Geise*, 159 Ill. 2d 515-19; *Mein*, 109 Ill. 2d at 7. The circuit court's dismissal of count II is, therefore, affirmed.

■ As a final issue, we address the propriety of the trial court's dismissal of count III of the plaintiff's complaint, his action for negligent spoliation of evidence. In order to properly state an action for negligence based upon spoliation of evidence, a plaintiff must plead facts that, if true, would establish a duty owed by the defendant to the plaintiff, a breach of that duty, an injury proximately caused by the breach, and damages. *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 194-95, 652 N.E.2d 267 (1995). In this case, the trial court held that the plaintiff had not satisfied and could not satisfy the causation element of the claim and, therefore, dismissed the cause of action. We agree.

In order to satisfy the causation element of an action for negligent spoliation of evidence, a plaintiff must allege "sufficient facts to support a claim that the loss or destruction of the evidence caused the plaintiff to be unable to prove an underlying lawsuit." (Emphasis omitted.) *Boyd*, 166 Ill. 2d at 196. As the *Boyd* court explained:

"A plaintiff need not show that, but for the loss or destruction of the evidence, the plaintiff would have prevailed in the underlying action. This is too difficult a burden, as it may be impossible to know what the missing evidence would have shown.

A plaintiff must demonstrate, however, that but for the defen-

dant's loss or destruction of the evidence, the plaintiff had a reasonable probability of succeeding in the underlying suit. In other words, if the plaintiff could not prevail in the underlying action even with the lost or destroyed evidence, then the defendant's conduct is not the cause of the loss of the lawsuit. This requirement prevents a plaintiff from recovering where it can be shown that the underlying action was meritless." *Boyd*, 166 Ill. 2d at 196 n.2.

In count III of his complaint, the plaintiff incorporated all of the allegations contained in counts I and II, his retaliatory discharge and conspiracy claims, respectively. He asserts that LaSalle's loss or destruction of certain evidence "will make it more difficult for him to succeed in his litigation." However, the plaintiff fails to identify any alleged causes of action he has or might have had against LaSalle other than those alleged in counts I and II of his complaint. Having found, for reasons other than the absence of evidence, that the plaintiff could not prevail on a claim of retaliatory discharge or civil conspiracy, we conclude that he has not met his burden to plead facts that satisfy the causation element of an action for negligent spoliation of evidence. As a consequence, we also affirm the trial court's dismissal of count III of the plaintiff's complaint.

Based on the foregoing analysis, the judgment of the circuit court granting LaSalle's motion to dismiss the plaintiff's complaint and each of the three counts pled therein is affirmed.

Affirmed.

WOLFSON and HALL, JJ., concur.