(Nos. 86420, 86435 cons.—

ALICIA WASHINGTON, Appellant, v. THE CITY OF
CHICAGO, Appellee.—JOHN KNIGHT, Appellant,
v. THE CITY OF CHICAGO, Appellee.

*Opinion filed September 23, 1999.—Rehearing denied
November 29, 1999.*

Ciardelli & Cummings, of Chicago (Victor F. Ciardelli, Patrick M. Cummings, Steven J. Rizzi and Dom J. Rizzi, of counsel), for appellant Alicia Washington.

Paul T. Julian, of Julian & Associates (David A. Novoselsky and Linda A. Bryceland, of David A. Novoselsky & Associates, of counsel), all of Chicago, for appellant John Knight.

Brian L. Crowe, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon and Myriam Zreczny, of counsel), for appellee.

JUSTICE HARRISON delivered the opinion of the court:

The issue in these two consolidated cases is whether the City of Chicago had a duty to construct a road median in such a way as to make it safe for use by emergency road vehicles. In reversing judgment against the City, the appellate court held that no such duty existed. 298 Ill.

App. 3d 797. We granted leave to appeal (177 Ill. 2d R. 315) and now affirm the appellate court.

The incident giving rise to this litigation took place near midnight on the night of September 11, 1989. In responding to an emergency call, a Chicago fire department snorkel truck proceeded south on South Halsted Street at approximately 35 miles per hour. In order to bypass a vehicle ahead of it, the fire truck left the roadway and drove onto a raised median that separates the street's southbound traffic lanes from its northbound lanes.

Unbeknownst to the fire truck's driver, the median contained planter boxes for flowers and cutouts to accommodate trees. As the truck proceeded along the median, its left front tire hit one of the planter boxes. The impact caused the vehicle to lose control and enter the oncoming traffic lanes, where it struck an automobile driven by Dovie Knight. Knight was killed, as was her unborn child, Laquitta. Alicia Washington, a passenger in Knight's car, was injured.

As a result of this accident, three lawsuits were filed. Knight's father, as administrator of her estate and as special administrator of the estate of Laquitta, brought suit against the City under the Wrongful Death Act (Ill. Rev. Stat. 1989, ch. 70, par. 1 *et seq.*). A wrongful death action against the City was also brought by Edward Newson, Jr., who claimed to be Laquitta's father. In addition, a personal injury action was filed by Washington against both the City and the driver of the fire truck.

Knight's case was consolidated with the case brought by Newson. Those proceedings were, in turn, consolidated with the personal injury action filed by Washington. Following various developments not relevant here, the matter proceeded to trial before a jury.

As submitted to the jury, the case consisted of the claims asserted against the City by Knight in his wrong-

ful death action involving Dovie and the claims asserted against the City by Washington in her personal injury action. Both Knight and Washington argued that the City should be held liable based on negligence. Specifically, they contended that the City was negligent on the grounds that it had constructed the median on Halsted Street "in a manner that created a condition that was not reasonably safe" and that their injuries were proximately caused by that unsafe condition.

The jury returned a verdict in favor of Knight and Washington and against the City. It awarded damages to Knight in the amount of $1.5 million and to Washington in the amount of $200,000. After the circuit court entered judgment on that verdict, the City filed a timely post-trial motion pursuant to section 2—1202(b) of the Code of Civil Procedure (735 ILCS 5/2—1202(b) (West 1994)). In that motion, the City requested that the court enter judgment notwithstanding the verdict or, in the alternative, that it be granted a new trial.

The City's post-trial motion was denied, and it appealed. On appeal, the appellate court ruled that the circuit court had erred in refusing to grant the City's motion for judgment notwithstanding the verdict. In the appellate court's view, the City was not liable, as a matter of law, because it had no duty to make the road median safe for use by emergency vehicles. Accordingly, the appellate court reversed the circuit court's judgment.

The legal principles governing our review are well established. Judgment notwithstanding the verdict is properly granted where all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). Where plaintiffs have obtained recovery against a defendant based on negligence, as was the case here, judgment

notwithstanding the verdict is required if the defendant did not owe the plaintiffs a duty. See *Redlin v. Village of Hanover Park*, 278 Ill. App. 3d 183, 190 (1996). That is so because "[u]nless a duty is owed, there is no negligence" (*American National Bank & Trust Co. v. National Advertising Co.*, 149 Ill. 2d 14, 26 (1992)), and plaintiffs cannot recover as a matter of law (see *Redlin*, 278 Ill. App. 3d at 190).

Whether a duty exists is a question of law for the court to decide. In resolving whether a duty exists, a court must determine whether there is a relationship between the parties requiring that a legal obligation be imposed upon one for the benefit of the other. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 227 (1996). The factors relevant to the courts' imposition of a duty include the reasonable foreseeability of injury, the likelihood of such injury, the magnitude of guarding against the injury, and the consequences of placing that burden on the defendant. *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 425 (1998).

The City is subject to the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/3—102 (West 1994)). Section 3—102(a) of the Act states:

> "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used ***." 745 ILCS 10/3—102(a) (West 1994).

This provision does not impose any new duties on municipalities. Rather, it codifies a municipality's general duty at common law to maintain its property in a reasonably safe condition. *Wagner v. City of Chicago*, 166 Ill. 2d 144, 150 (1995).

Under the common law, governmental entities, including municipalities such as the City, have discretion in determining whether to perform a public work or make an improvement. Once the decision to perform the work is made, however, the work must be done with reasonable care and in a nonnegligent manner. *Snyder v. Curran Township*, 167 Ill. 2d 466, 474-75 (1995). Moreover, a municipality is liable if, after it constructs or improves public property, the construction or improvement causes injury and "it appears from its use that it has created a condition that is not reasonably safe." 745 ILCS 10/3—103(a) (West 1994). When a city creates a hazardous condition and someone is injured as a consequence, it must respond in damages. *Baran v. City of Chicago Heights*, 43 Ill. 2d 177, 181 (1969).

In order for a public entity to owe a duty to protect a party from unreasonably dangerous conditions existing on its property, that party must be both a permitted and an intended user of the property. *Boub v. Township of Wayne*, 183 Ill. 2d 520, 524 (1998). There is no question that Dovie Knight and Washington, the passenger in her auto, were permitted and intended users of the roadway where this accident occurred. Nevertheless, we agree with the appellate court that the scope of the City's duty to maintain property in a reasonably safe condition does not extend to the circumstances present here.

In order for a duty to be imposed, the occurrence at issue must have been reasonably foreseeable. *Cunis v. Brennan*, 56 Ill. 2d 372, 375-76 (1974). Where injury results from freakish, bizarre or fantastic circumstances, no duty is present and no negligence claim can be asserted. *Widlowski v. Durkee Foods*, 138 Ill. 2d 369, 376 (1990). In the case before us today, the accident which gave rise to plaintiffs' injuries was not a reasonably foreseeable consequence of the condition of the median.

In making this determination, we note that the

median was not dangerous in itself. The median was not meant to be driven on by any vehicular traffic, much less a fire truck, and was not intended to serve as an auxiliary traffic lane for emergency vehicles. Its purpose was simply to separate traffic lanes. There was no evidence that it presented any risk of harm to the motoring public as so used. The median became dangerous only when the fire truck's driver decided to drive onto it in a large piece of equipment at night at an excessive rate of speed. Under these circumstances, the occurrence at issue here could be regarded as reasonably foreseeable only if it were foreseeable that fire truck drivers would operate their vehicles as the driver did in this case. See *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 49-50 (1991). There is no support for such a view in the record before us.

Testimony presented at trial did show that firefighters are trained in how to operate emergency vehicles outside normal traffic lanes, that they routinely traverse medians that are flush with the road surfaces, and that they sometimes drive upon curb-height medians such as the one involved in this case. None of the testimony, however, indicated that it was proper, acceptable or normal to drive a snorkel truck onto a raised median at night at 35 miles per hour. To the contrary, the witnesses stated that when firefighters do take their vehicles onto a raised median, the normal procedure is to proceed slowly and gradually. According to Chicago Fire Department Battalion Chief Casey, who was in the truck at the time of the accident, the driver is supposed to approach the median at an angle, come to a complete stop, accelerate slightly to "creep" the front tires onto the raised area, proceed a short distance, stop again, then "creep" the rear tires up. Battalion Chief Casey had never been in another fire truck that attempted to mount a raised median at 35 miles per hour, nor, indeed, had the driver of the truck. The driver testified that the maneuver was

not safe and that he attempted it only because he thought quickly deteriorating traffic conditions left him no better alternative.

Finally, we note that there is no merit to plaintiffs' contention that the use of raised medians by fire trucks is sanctioned by law. Plaintiffs premise their contention on section 11—205 of the Illinois Vehicle Code (625 ILCS 5/11—205 (West 1994)), which provides that drivers of authorized emergency vehicles may disregard certain provisions of the Vehicle Code when responding to an emergency call, pursuing an actual or suspected violator of the law, or responding to a fire. None of the provisions specified in that statute, however, pertain to use of the medians.

For the foregoing reasons, the City could not reasonably have foreseen that the median at issue in this case would cause an accident of the kind that killed Knight's daughter and injured Washington. Where one cannot reasonably foresee any injury as the result of one's act, or if one's conduct was reasonable in light of what one could anticipate, there is no negligence and no liability. W. Keeton, Prosser & Keeton on Torts § 43, at 280 (5th ed. 1984). The appellate court was therefore correct in holding that the City was entitled to judgment notwithstanding the verdict. Accordingly, the appellate court's judgment is affirmed.

*Affirmed.*