NOTICE

Decision filed 06/04/07. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-04-0294

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| DEBORAH L. JONES, Individually and as Special Administrator of the Estate of Thomas R. Jones, Deceased, | ) Appeal from the<br>) Circuit Court of<br>) Madison County. |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 96-L-560 |
| | ) |
| O'BRIEN TIRE AND BATTERY SERVICE CENTER, INC., and OHIO CASUALTY INSURANCE COMPANY, | )<br>)<br>) |
| | ) |
| Defendants and Third-Party Plaintiffs-Appellees and Cross-Appellants, | )<br>) |
| | ) |
| v. | ) |
| | ) |
| DAVE MACIOS, d/b/a Sugarloaf Landscape Nursery, | )<br>) |
| | ) |
| Third-Party Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| COUNTRY MUTUAL INSURANCE COMPANY, | ) Honorable<br>) Nicholas G. Byron, |
| Third-Party Defendant-Appellant and Cross-Appellee. | ) Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the opinion of the court:

The parties to this appeal were all defendants in litigation arising from a fatal vehicle accident. O'Brien Tire and Battery Service Center, Inc. (O'Brien Tire), and Ohio Casualty Insurance Company (Ohio Casualty) filed a third-party complaint against Dave Macios and Country Mutual Insurance Company (Country Mutual) for negligent spoliation of evidence. Country Mutual appeals a judgment against it, arguing that the trial court erred in denying its motions for a judgment notwithstanding the verdict and a new trial. Country Mutual

1

contends it was entitled to that relief because (1) it owed no duty to the third-party plaintiffs to preserve the evidence at issue, (2) it did not breach any duty it owed, (3) the third-party plaintiffs did not demonstrate that they had sustained any damages, (4) the actions of a nonparty were the sole proximate cause of the loss of the evidence, and (5) the jury's verdict was against the manifest weight of the evidence. Third-party plaintiffs O'Brien Tire and Ohio Casualty cross-appeal, arguing that (1) the trial court erred by instructing the jury that, if it found Country Mutual to be liable, it was to determine the amount of damages that would fairly and reasonably compensate the third-party plaintiffs (see Illinois Pattern Jury Instructions, Civil, No. 30.01 (2000) (hereinafter IPI Civil (2000)), (2) the court erred in denying their motion for leave to amend their complaint to add a count alleging willful and wanton spoliation of evidence, and (3) the court erred in denying their motion for leave to amend their complaint to request prejudgment interest. We affirm.

## I. BACKGROUND

Country Mutual insured a truck owned by Dave Macios for use in his business, Sugarloaf Landscape Nursery (Sugarloaf). Mechanic Wesley Lowery, a Sugarloaf employee, was responsible for maintaining the business's vehicles. He performed minor repairs on the vehicles himself but took them to auto repair shops for major work. On September 7, 1994, Lowery took the truck to O'Brien Tire to have the tires inspected. The truck was a dual-wheel truck, meaning that each rear axle held two wheels, side by side. Lowery asked Mark Buenger, the general operations manager at O'Brien Tire, to inspect the truck's tires and do whatever was necessary for the truck to pass a safety inspection. Buenger and his brother, Scott, replaced all four rear tires. They also replaced the two left rear wheels because they noticed that the wheels were a type of wheel that was obsolete and unsafe. On September 27, 1994, the left rear wheel assembly came off the truck, and the outer wheel struck a car driven by Thomas Jones. This caused Jones to collide with a tractor-trailer. He died as a

2

result of his injuries.

When Sugarloaf secretary Cathy Rothmeier reported the accident to Country Mutual, the case was assigned to claims adjustor Jerry Krone. Krone hired Tim Finley, an accident reconstruction specialist, to determine the likely cause of the accident. Finley visited Sugarloaf and inspected the truck and the wheels the day of the accident. He told Sugarloaf employees to keep the wheels. Within one week of the accident, Krone told Macios to preserve the wheels by keeping them "out of the weather". Macios stored both wheels, along with the truck, in an open barn. We note that, although both left rear wheels came off of the truck, it was the outer wheel that was critical to the case. On October 12, 1994, Krone sent Macios a letter, which read, in relevant part:

"This will confirm my telephone conversation with your secretary, [C]athy[,] on October 10, 1994. In our conversation[,] I indicated to her it would be crucial for our case for you to retain the two wheels and tires which came off of your vehicle during this collision.

I would ask that you label them clearly 'evidence, do not touch' and store them in a secure place so that they may not be tampered with in the event we need these as evidence in a trial situation.

I would also ask that when you have your [truck] repaired that [*sic*] you save the wheel studs and attach them to the wheels and also mark them clearly as evidence for trial purposes."

Macios testified that he did not receive this letter.

Throughout the three months following the accident, Country Mutual was engaged in settlement negotiations with the Jones estate on behalf of Macios. Macios testified that, at least twice during this time, Macios asked Krone for permission to fix the truck, which he needed for use in his business. Repairing it entailed mounting a new wheel on the truck. It

3

is not entirely clear whether both wheels were damaged and in need of replacement or only the outer wheel. Because the tire mounted to the outer wheel was not damaged in the accident, Macios intended to have it removed from the damaged wheel and mounted to a new wheel and then have the entire wheel assembly mounted again on the truck. It is not clear from the record why the truck had to remain out of service in order to preserve the evidence, apart from the expense of purchasing a new tire. According to Macios, each time he requested permission to get these repairs, Krone told him to wait. According to Krone, however, he never told Macios to wait to repair the truck.

On November 3, 1994, Finley issued his report. He concluded that the accident was caused by (1) the failure of the wheel installer to tighten the lug nuts and (2) the failure of the driver to conduct a pretrip inspection.

In mid-December 1994, according to Macios, he again asked Krone if he could have the truck repaired. This time, Krone told him yes. Although Macios did not specifically ask whether he could throw away the wheels and Krone did not explicitly state that he could, the truck remained out of service until this point precisely *because* Krone and Country Mutual had told Macios several times not to fix it. On December 29, 1994, Lowery took the truck to Patterson Brake and Front End Service (Patterson Tire) for repair. He did not take the truck to O'Brien Tire, the repair shop Sugarloaf ordinarily used for such repairs, because Krone had instructed Macios to take the truck elsewhere. The crucial outer wheel was apparently discarded by an employee of Patterson Tire. Krone denied telling Macios that he could repair the truck, that he could not repair the truck, or that he should not take the truck to O'Brien Tire for the repair.

On February 28, 1995, Jones's widow, Deborah, brought suit on behalf of his estate against Macios and his insurer, Country Mutual. The parties reached a $475,000 settlement in that case on October 27, 1995. In a letter dated December 12, 1995, Country Mutual

informed Macios that the suit against him had been settled and dismissed. The letter stated, "This litigation is now at an end and you need no longer concern yourself with it."

On August 30, 1996, the Jones estate filed a suit against O'Brien Tire and its insurer, Ohio Casualty. The parties reached a $1.45 million settlement on October 29, 1998. On September 11, 1998, shortly before the settlement was reached, O'Brien Tire and Ohio Casualty filed a third-party complaint against Country Mutual and Macios and alleged negligent spoliation of evidence due to the loss of the wheels. The trial court granted Country Mutual's motion for a judgment on the pleadings and Macios's motion to dismiss. Ohio Casualty and O'Brien Tire appealed. We reversed on June 7, 2001, finding that the third-party complaint sufficiently stated a claim for negligent spoliation of evidence. *Jones v. O'Brien Tire & Battery Service Center, Inc.*, 322 Ill. App. 3d 418, 425, 752 N.E.2d 8, 14-15 (2001).

On remand, in December 2003 and January 2004, Country Mutual filed motions for a summary judgment on the issues of causation and duty. In its motions, Country Mutual argued that it did not owe the third-party plaintiffs a duty to preserve evidence and that they failed to demonstrate that the loss of the wheels left them completely unable to present a defense in the underlying suit. On January 9, 2004, the third-party plaintiffs filed a motion for leave to amend their complaint to add a count alleging willful and wanton spoliation of evidence. The court denied all three motions on January 23, 2004. On February 5, the third-party plaintiffs filed a motion for leave to amend their complaint to add a request for prejudgment interest, which was also denied.

On February 7, 2004, the case proceeded to a trial. At the opening of the trial, the court granted O'Brien Tire's oral motion to voluntarily dismiss Macios as a third-party defendant. On February 18, 2004, the jury returned a verdict of $475,000 in favor of O'Brien Tire and Ohio Casualty. The court entered a judgment on the verdict the following day.

5

Country Mutual filed motions for judgment notwithstanding the verdict and a new trial, which the court denied. This appeal followed.

## II. COUNTRY MUTUAL'S APPEAL

In order to prevail on a claim of negligent spoliation of evidence, a party must show that (1) the party alleged to have been negligent had a duty to preserve the evidence, (2) the party breached that duty, (3) the breach proximately caused an injury, and (4) the party seeking compensation for negligent spoliation suffered actual damages as a result. *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 194-95, 652 N.E.2d 267, 270 (1995). In other words, regular negligence principles apply. *Boyd*, 166 Ill. 2d at 194, 652 N.E.2d at 270. Country Mutual contends that the third-party plaintiffs failed to demonstrate each of these elements. It also argues that it was entitled to a jury instruction on sole proximate cause and that the jury's verdict was against the manifest weight of the evidence. We address these contentions in turn.

### A. Duty to Preserve the Evidence

Country Mutual first argues that it did not owe the third-party plaintiffs a duty to preserve the evidence. The general rule is that a party has no duty to preserve evidence. That duty may arise, however, if there is an agreement or contract between the parties imposing the duty, if the duty is imposed by statute, or if some other special circumstance warrants it. *Boyd*, 166 Ill. 2d at 195, 652 N.E.2d at 270-71. A duty to preserve evidence may also arise where a party voluntarily assumes the duty by its conduct. *Boyd*, 166 Ill. 2d at 195, 652 N.E.2d at 271. If *any* of these circumstances exist, a party owes the duty to preserve evidence if a reasonable person in that party's position should have foreseen that the evidence would be material to a potential lawsuit. *Boyd*, 166 Ill. 2d at 195, 652 N.E.2d at 271.

The supreme court recently clarified the law regarding the duty to preserve evidence in *Dardeen v. Kuehling*, 213 Ill. 2d 329, 821 N.E.2d 227 (2004). There, the court explained

that *Boyd* set out a two-prong test. Under the first prong, a spoliation plaintiff must demonstrate that at least one of the circumstances outlined in *Boyd* exists. *Dardeen*, 213 Ill. 2d at 336, 821 N.E.2d at 231. Under the second prong, the plaintiff must show that the duty extends to the specific evidence at issue by demonstrating that a reasonable person in the defendant's position should have known the evidence would be material to potential civil litigation. If the spoliation plaintiff does not satisfy both prongs of the test, there is no duty to preserve the evidence at issue. *Dardeen*, 213 Ill. 2d at 336, 821 N.E.2d at 231.

At issue in *Dardeen* was the first prong of *Boyd*. There, the plaintiff was injured when he tripped on a hole in a brick sidewalk in front of the home of the defendant in the underlying action. After the plaintiff informed the defendant of his injuries but before he filed his premises liability suit, the defendant asked her insurance company if she could repair the sidewalk so that no one else would be injured. A claims adjustor told her to go ahead. *Dardeen*, 213 Ill. 2d at 331, 821 N.E.2d at 228.

In his later spoliation claim against the insurance company, the plaintiff argued that the contractual relationship between the defendant in the underlying action and her insurance carrier satisfied the first prong of *Boyd*. *Dardeen*, 213 Ill. 2d at 336, 821 N.E.2d at 231. The supreme court first noted that the defendant's insurance contract could not be read to impose a contractual duty to preserve evidence for the plaintiff's benefit because he was not a party to that contract. *Dardeen*, 213 Ill. 2d at 336-37, 821 N.E.2d at 231-32. The court then rejected the plaintiff's argument that the relationship between the insured and the insurance carrier constituted a "special circumstance" under *Boyd* sufficient to impose a duty to preserve evidence. The plaintiff's argument was based on the nature of that relationship. Specifically, he argued that the carrier had the opportunity to control the defendant's actions with respect to the evidence at issue, thus giving rise to a duty to preserve it. That ability to control the evidence stemmed from the carrier's "authority to guide or manage the actions of

7

its insured." *Dardeen*, 213 Ill. 2d at 337, 821 N.E.2d at 232.

For our purposes, it is important to note what the *Dardeen* plaintiff did *not* argue–he did not argue that the insurance company did anything to voluntarily assume a duty to preserve evidence. Thus, the court did not address this issue. As will become apparent, this distinction is significant. What the plaintiff in *Dardeen* argued was that the insurance company's ability to instruct its insured regarding how to handle evidence in her possession gave the insurance company a degree of control over that evidence that was *itself* sufficient to impose on the insurance company a duty to preserve evidence under the "special circumstance" language in *Boyd*. See *Dardeen*, 213 Ill. 2d at 337, 821 N.E.2d at 232.

In rejecting this argument, the supreme court explained that it had previously "hinted at what special circumstance might give rise to a duty to preserve evidence in *Miller v. Gupta*, 174 Ill. 2d 120[, 672 N.E.2d 1229] (1996)." *Dardeen*, 213 Ill. 2d at 338, 821 N.E.2d at 232. In *Miller*, a physician defendant in a medical malpractice case left X rays requested by the plaintiff where they were discarded by the hospital's cleaning staff. *Miller*, 174 Ill. 2d at 123-24, 672 N.E.2d at 1231. The supreme court ruled that the plaintiff should be allowed on remand to amend her complaint to conform with the supreme court's decision in *Boyd*, which was decided while her appeal was pending. *Miller*, 174 Ill. 2d at 129, 672 N.E.2d at 1233. In *Dardeen*, the court distinguished the circumstances before it from those present in *Miller* on the grounds that (1) the *Dardeen* plaintiff never asked either the defendant or her insurer to preserve or provide him with evidence, (2) the insurance company in *Dardeen* did not have possession of the evidence, and (3) the insurance company never "segregated [the evidence] for the plaintiff's benefit." *Dardeen*, 213 Ill. 2d at 338, 821 N.E.2d at 232.

We note that, in Country Mutual's first appeal in the instant matter, we found that Macios's possession of the wheel was sufficient to constitute a special circumstance that satisfied the first prong of *Boyd*, and we therefore imposed upon Macios a duty to preserve

8

the wheel. *Jones*, 322 Ill. App. 3d at 422, 752 N.E.2d at 12. We then found that the same reasoning was applicable to Country Mutual. *Jones*, 322 Ill. App. 3d at 425, 752 N.E.2d at 14-15. The supreme court announced its decision in *Dardeen* after the proceedings on remand took place and the present appeal was filed. In the wake of *Dardeen*, the rationale underlying our holding on the first appeal in this case may no longer be valid, at least with respect to Country Mutual. We also note, however, that the *Dardeen* court emphasized that the first prong of *Boyd* is satisfied if any one of the bases to impose a duty to preserve evidence is present. *Dardeen*, 213 Ill. 2d at 336, 821 N.E.2d at 231 (relying on *Boyd*, 166 Ill. 2d at 195, 652 N.E.2d at 270-71). Because we will conclude that the first prong is satisfied by a voluntary undertaking on the part of Country Mutual, we find that the result we reached is still valid.

Country Mutual argues that, like the insurance company involved in *Dardeen*, it did not control the wheels because they belonged to Macios and Macios could therefore do with them as he pleased. O'Brien Tire and Ohio Casualty, by contrast, argue that Country Mutual did control the wheels through its ability to guide the actions of its insured. Unlike the insurance company in *Dardeen*, they contend, Country Mutual exercised this control by instructing Macios not to dispose of the wheels. In resolving these arguments, we must first determine what degree of control is necessary to establish a duty to preserve evidence under the circumstances before us.

The *Dardeen* court expressly declined to decide whether actual possession of the evidence is necessary to impose a duty to preserve evidence. The court held only that the *opportunity* to control evidence, standing alone, does not impose that duty. See *Dardeen*, 213 Ill. 2d at 339, 821 N.E.2d at 233. Because the court found that the insurance company had not exercised any control over the evidence, it did not need to consider what level of control over the evidence a spoliation defendant must exercise in order to fit within the

9

"special circumstance" language of *Boyd*. We need not determine this issue either. We emphasize the distinction between *Dardeen* and the case before us: there, the only basis upon which to find a duty to preserve evidence was the plaintiff's contention that the insurance company had enough control over the evidence that it should be deemed a special circumstance justifying the imposition of a duty to preserve; the issue here is whether Country Mutual assumed a duty to preserve evidence through its actions. Thus, the third-party plaintiffs need not allege or demonstrate that Country Mutual exercised enough control over the wheel to constitute a special circumstance as contemplated by the *Boyd* court. Nevertheless, the law cannot impose upon a party an obligation to do something that is impossible for it to do. We must, therefore, consider whether Country Mutual had at least enough control over the wheels to be able to fulfill an obligation to preserve them as evidence. We find that it did.

"Control" is defined as follows: "Power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee. The ability to exercise a restraining or directing influence over something." Black's Law Dictionary 329 (6th ed. 1990). In the instant case, while it is certainly true that Country Mutual did not have the kind of complete control over the wheels that it would have had if it had taken possession of them, it had–and exercised–the authority to direct Macios, as its insured, to preserve the wheels. We thus find that Country Mutual exercised enough control over the evidence to allow it to take appropriate steps to preserve it.

We further find that Country Mutual, through its actions, voluntarily assumed a duty to exercise reasonable care and due diligence to preserve the evidence. Country Mutual voluntarily undertook to preserve the wheels when it instructed its insured, Macios, to keep them. Once Country Mutual undertook to preserve the evidence for its own benefit, this voluntary undertaking imposed a duty to continue to exercise due care to preserve the

10

evidence for the benefit of any other potential litigants. See *Boyd*, 166 Ill. 2d at 195, 652 N.E.2d at 271 (citing *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 74, 199 N.E.2d 769, 773 (1964) (explaining that "liability can arise from the negligent performance of a voluntary undertaking")).

Under the second prong of *Boyd*, we must determine whether Country Mutual's duty to preserve evidence encompasses the evidence at issue, the damaged wheel assembly from Macios's truck. In this regard, we note that Country Mutual acted through one of its claims adjustors, Krone. Krone's job as a claims adjustor was to anticipate litigation and evaluate evidence, as he did when he sent his expert, Finley, to Sugarloaf to examine the wheels. We believe that a reasonable claims adjustor in Krone's position would have anticipated the possibility of future litigation in this matter. Although Country Mutual and the Jones estate had been engaged in settlement negotiations, no formal agreement had been reached at the time the wheels were discussed. Moreover, Finley's report indicated that loose lug nuts caused the wheel assembly to come off the truck, thereby making a claim against O'Brien Tire by the Jones estate or a third-party claim against O'Brien Tire by Macios easy to foresee. A reasonable claims adjustor in Krone's position would also anticipate that the cause of the wheels coming off the truck would be a central issue in any such claim. It was reasonably foreseeable that the wheels and tires would be critical evidence in future litigation, just as Krone had foreseen their importance in Country Mutual's defense–he characterized their preservation as "crucial for our case" in his letter to Macios. We conclude that Country Mutual, once having undertaken the duty to preserve the wheels, had a duty to exercise reasonable care to preserve the wheels as evidence for any party that might need to use them in future litigation.

Country Mutual also argues that it had no duty to inform O'Brien Tire or Ohio Casualty of the existence and whereabouts of the evidence. In their brief, O'Brien Tire and

11

Ohio Casualty point out that the rulings below were fully supported by evidence that Country Mutual breached a duty to preserve the evidence and that allegations related to its failure to inform Ohio Casualty of the location of the wheels were relevant to whether Country Mutual's conduct was willful and wanton. At oral argument, however, they argued that, had Ohio Casualty been informed of the existence and location of the wheels, it could have retained an expert to photograph and/or examine the outer wheel, thereby allowing the third-party plaintiffs to develop evidence that would serve the same purpose as the wheel itself. In either case, they present no arguments that Country Mutual had a duty to inform them of the location of the evidence as an independent duty. Moreover, we believe that the rulings and verdict below are supported by our conclusions regarding Country Mutual's duty to preserve the evidence. Thus, we need not consider Country Mutual's arguments concerning the lack of a duty to inform another party concerning the existence or whereabouts of evidence.

## B. Breach

Country Mutual next argues that the court erred in denying its motion for a judgment notwithstanding the verdict because the evidence did not demonstrate that it had breached its duty to preserve evidence, assuming it owed that duty. We disagree.

Country Mutual's argument is twofold. It first argues that it did preserve the evidence by preserving the photographs Finley had taken of the outer wheel on the day of the accident. It also argues that it acted with reasonable caution in instructing Macios to keep the wheels. Wade Bartlett, a mechanical engineer and automobile technician who testified as an expert witness on behalf of Ohio Casualty, explained why these photographs were not sufficient. He explained that the photographs taken by Finley allowed him to conclude, just as Finley had, that improperly tightened lug nuts had caused the wheel assembly to come loose. He testified, however, that Finley's photographs were not sufficiently detailed to permit him to

12

conclude to a reasonable degree of engineering certainty when the lug nuts were last tightened. He explained that some types of repairs require that the wheels be removed and then replaced. For example, in order to work on the brakes, a mechanic must remove the wheels in order to have access to the brakes. There was conflicting evidence in this case concerning whether any subsequent repairs took place. According to Buenger, when Lowery brought the truck to O'Brien Tire, he told Buenger that he was going to work on the brakes so that the truck would pass inspection. Records from Sugarloaf, however, indicate that no such repairs took place after the truck left O'Brien Tire. This uncertainty regarding whether the wheels were removed and replaced after the truck left O'Brien Tire could have been resolved by determining *when* the lug nuts were last tightened.

Bartlett opined that the lug nuts likely all came off at the same time, something that most likely occurred when the truck had been driven only a few miles after the wheel assembly had been last remounted on the truck. He explained that Finley's photographs showed marks made from the lug nuts scratching against the metal surface of the outer wheel. Some of the markings looked crisp and silvery in the photographs. Bartlett explained that these features indicate that the lug nuts had been recently tightened, due to the fact that the wheels are made of steel, a metal which corrodes quickly. Had the scratches been made several days or even weeks before the accident, there would be rust or dirt on them. The problem with the photographs, he further explained, is that they do not provide enough close-up detail of the scratches for Bartlett to be able to reach such a conclusion definitively.

Bartlett testified that having access to the outer wheel itself would be the best way to make the determination. This would have allowed him to look at the scratches through a microscope and eliminate the possibility that the lighting in the photographs made the scratches look silvery when in fact they had corroded. He further testified that photographs would be an acceptable substitute for the wheel itself if they were taken by a camera able to

13

take close-up photographs of an area the size of a human thumbnail clearly enough to document the "fine detail" of the markings. Thus, we find that the jury properly concluded that the evidence was not preserved by the photographs when the wheels themselves were lost.

As previously noted, claims of spoliation of evidence are governed by traditional negligence principles. Thus, the third-party plaintiffs needed to demonstrate that Country Mutual did not exercise reasonable care in acting to preserve the evidence. Country Mutual argues that it did exercise reasonable care by requesting several times that Macios not dispose of the wheels and never telling him explicitly that he could dispose of them. This argument fails for two reasons. First, the evidence supports a conclusion that Krone acted negligently by permitting Macios to have the truck repaired in December 1994 without reiterating to him at that time the importance of preserving the wheels. Macios knew nothing about the preservation of evidence and relied upon Krone to tell him what to do to properly preserve the wheels. Krone, on the other hand, knew or should have known that the wheels were critical evidence that needed to be protected from possible corrosion. He also knew or should have known that Macios–who ran a landscape business and, unlike Krone, was not regularly involved in automobile accident litigation–was unlikely to know how to preserve the evidence without guidance from Krone. According to Macios, prior to December 1994, Krone had instructed him not to repair the truck. It does not take much foresight to predict that, once told he could repair the truck, Macios might assume that the change in Krone's instructions meant the wheels were no longer needed. It was negligent for Krone to fail to consider this possibility and not to remind Macios to make sure to get the wheels back from the repair shop. If we consider Krone's version of events, his negligence is even more glaring. According to Krone, he never discussed the repair of the truck with Macios. Although the request in Krone's October 1994 letter that Macios retain the wheel studs and

14

attach them to the wheels might be interpreted to contain an implicit instruction to be sure to retain the wheels after having the truck repaired, Krone admitted that he never followed up on the letter to be sure Macios received and understood it.

Country Mutual's argument also fails because it acted negligently in failing to take adequate steps to instruct Macios on how to preserve the wheels in the condition they were in on the day of the accident. Macios stored the wheels, along with the truck, in an open barn on Sugarloaf's property. Bartlett testified that the wheels needed to be stored in an airtight plastic bag. There was evidence that Country Mutual sent Macios a letter on October 12, 1994, which gave somewhat more detailed instructions on preserving evidence than the verbal instructions to store it out of the weather. While the letter did not instruct him to store the wheel assembly in an airtight bag, it did highlight the importance of keeping it intact, requesting that the wheels be labeled "do not touch" and stored "in a secure place so that they may not be tampered with." There was also evidence that Macios never received the letter and that Country Mutual never checked to see that Macios was taking proper steps to preserve the wheels in their condition at the time of the accident. We conclude that the jury properly found that Country Mutual breached its duty to exercise reasonable care in preserving the wheels.

## C. Causation

Next, Country Mutual contends that it was entitled to a judgment notwithstanding the verdict because the evidence did not support a finding that any negligence on its part proximately caused the wheels to be lost. This argument has two components. First, Country Mutual contends that the actions of Macios and Lowery, rather than those of Krone or any other Country Mutual employee, caused the wheels to be lost. This argument will be discussed in more detail when we address the parties' arguments concerning the court's refusal to give Country Mutual's requested sole-proximate-cause instruction. However, we

15

believe that the evidence supported a conclusion that Krone's negligence, as previously described, contributed to the actions Macios and Lowery took which eventually led to the loss of the wheel. We thus reject this argument.

The second part of Country Mutual's argument regarding causation revolves around precisely what harm must be proved by a party alleging spoliation of evidence. Country Mutual contends that it is insufficient to demonstrate that the loss of the evidence made the underlying case more difficult to prove but, rather, that the party must prove that it was unable to mount any defense in the underlying action. In support of this position, Country Mutual points to language in *Boyd*, where the supreme court stated, "[I]n a negligence action involving the loss or destruction of evidence, a plaintiff must allege sufficient facts to support a claim that the loss or destruction of the evidence *caused the plaintiff to be unable to prove an underlying lawsuit*." (Emphasis in original.) *Boyd*, 166 Ill. 2d at 196, 652 N.E.2d at 271.

Country Mutual argues that the third-party plaintiffs have not met this standard because other evidence existed that allowed them to mount a defense. For instance, Bartlett was able to opine that the lug nuts had been tightened within a few miles before the accident, on the basis of the photographs that existed, albeit less conclusively than he would have been able to do had the outer wheel been preserved. We believe that this argument misreads *Boyd*. We find nothing in *Boyd* or subsequent cases to suggest that a spoliation plaintiff can only prevail by demonstrating that the loss of critical evidence leaves it with no evidence at all to support a claim or defense in the underlying litigation. Indeed, the quoted language was meant to emphasize the fact that, if a spoliation plaintiff did not have a valid claim or defense supporting a reasonable chance of success in the underlying action, it should not be able to prevail on a spoliation claim because the evidence is lost. *Boyd*, 166 Ill. 2d at 196 n.2, 652 N.E.2d at 271 n.2.

The only case cited by Country Mutual which found that a spoliation claim could not

16

succeed without an allegation that the plaintiff was prevented from raising *any* claims or defense at all is *Veazey v. LaSalle Telecommunications, Inc.*, 334 Ill. App. 3d 926, 935, 779 N.E.2d 364, 372 (2002). There, however, the court found that both counts of the underlying action could not succeed for reasons *other* than the loss of evidence. *Veazey*, 334 Ill. App. 3d at 935, 779 N.E.2d at 372. Under those circumstances, the plaintiff could only meet his burden of proving that he had a reasonable chance of succeeding had the evidence not been lost, as required in *Boyd*, if he could show that he was prevented from raising some *other* claim. As Ohio Casualty and O'Brien Tire correctly note, *Boyd* requires a spoliation plaintiff to demonstrate that lost evidence made the plaintiff unable to *prove* the underlying case, which could happen when a critical piece of evidence is lost even if it is not the sole piece of evidence available to the party. We conclude that the jury could properly conclude from the evidence before it that the third-party plaintiffs met this burden.

### D. Damages

Country Mutual next argues that it was entitled to a judgment notwithstanding the verdict because the settlement was paid by West American Insurance Company (West American) rather than by Ohio Casualty or O'Brien Tire. Thus, it contends, the third-party plaintiffs failed to demonstrate that they suffered any damages as a result of the loss of the wheels. We disagree. Jim Schiller, the casualty manager for Ohio Casualty, testified that West American and Ohio Casualty are both a part of the Ohio Casualty Group. He further testified that West American wrote the policy covering O'Brien Tire and that he could not recall whether it was Ohio Casualty or West American that wrote the umbrella policy. In his capacity as Ohio Casualty's manager, Schiller had the ultimate authority to settle the Jones estate's claim against O'Brien Tire. From this it is clear that, as the third-party plaintiffs contend, West American and Ohio Casualty are parts of the same entity. Thus, Country Mutual's argument that damages were not proven fails.

17

E. Manifest Weight of the Evidence

Country Mutual next argues that the court erred in denying its motion for a new trial because the jury's verdict was against the manifest weight of the evidence. In support of this contention, it refers to the arguments it made regarding each element of a cause of action for negligent spoliation previously outlined. We have already found that the court correctly determined that Country Mutual had a duty to preserve the wheels as evidence and that the evidence supported the jury's findings of breach, causation, and damages. We thus conclude that Country Mutual was not entitled to a new trial on the basis that the jury's verdict was against the manifest weight of the evidence.

F. Jury Instruction on Duty

Country Mutual contends that it was entitled to a new trial because the court improperly instructed the jury that it owed the third-party plaintiffs a duty to preserve the evidence. It argues that whether there was a duty to preserve the wheels was a question of fact for the jury to determine. We disagree. Ordinarily, the existence of a duty is a question of law to be determined by the court. *Washington v. City of Chicago*, 188 Ill. 2d 235, 239, 720 N.E.2d 1030, 1032 (1999). However, where the duty depends on the existence of facts that are in dispute, the existence of the relevant facts presents a question for the jury to resolve. *King v. NLSB*, 313 Ill. App. 3d 963, 966, 730 N.E.2d 1222, 1225 (2000). Here, the existence of a duty to preserve the wheels as evidence was dependant on a factual finding on whether Krone or Country Mutual had undertaken the duty voluntarily. Although Macios's testimony regarding his discussions with Krone relating to the preservation of the wheels conflicted with Krone's testimony, the parties stipulated that Krone had sent the October 1994 letter instructing Macios to retain the wheels for possible use as evidence. It is unrefuted that Krone did at least this much to preserve the evidence. Consequently, the trial court directed a verdict on the issue of duty, a ruling we find was proper. Thus, the jury was

18

properly instructed.

## G. Sole Proximate Cause

Finally, Country Mutual argues that it was entitled to a new trial because the court erred in directing a verdict for the third-party plaintiffs on the issue of sole proximate cause, refusing to instruct the jury on sole proximate cause, and giving the third-party plaintiffs' requested instruction. We disagree.

The instruction at issue is IPI Civil (2000) No. 12.04. The first paragraph reads:

"More than one person may be to blame for causing an injury. If you decide that the defendant was negligent and that its negligence was a proximate cause of injury to the plaintiff, it is not a defense that some third person who is not a party to the suit may also have been to blame." IPI Civil No. (2000) 12.04.

The second paragraph provides:

"However, if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some person other than the defendant, then your verdict should be for the defendant." IPI Civil No. (2000) 12.04.

Ohio Casualty and O'Brien Tire requested that only the first paragraph be given. Country Mutual requested that the second paragraph be given as well.

A party is entitled to have the second paragraph given to the jury if there is some competent evidence in the record to support it. *McDonnell v. McPartlin*, 192 Ill. 2d 505, 522, 736 N.E.2d 1074, 1085 (2000). Country Mutual argues that, because Wesley Lowery, an employee of Sugarloaf, brought the wheel to Patterson Tire, where it was discarded, ample evidence supported an instruction apprising the jury that it could find that Lowery's actions were the sole proximate cause of the loss of the wheel. We disagree. The fact that Lowery took the wheel to Patterson Tire was never disputed. What was at issue was whether Krone and Country Mutual acted negligently in the guidance they gave Macios and his employees

19

regarding the preservation of the wheel and whether this led to the loss of the wheel. We are not faced with a situation in which an employee of the insured discarded evidence in spite of explicit instructions to the contrary. In that case, our conclusion might be different. Under the facts presented, Country Mutual was not entitled to an instruction on sole proximate cause, and the court did not err in refusing to give the instruction, giving the instruction requested by the third-party plaintiffs, or directing a verdict in favor of the third-party plaintiffs on the issue of sole proximate cause.

### III. O'BRIEN TIRE AND OHIO CASUALTY'S CROSS-APPEAL

The third-party plaintiffs argue that (1) the court erred in its jury instruction on damages, (2) the court abused its discretion in denying their motion for leave to amend their complaint to add a count alleging willful and wanton spoliation of evidence, and (3) the court erred in denying their motion for leave to amend their complaint to add a request for prejudgment interest.

### A. Measure of Damages

Ohio Casualty and O'Brien Tire contend that the court erred in instructing the jury that it was to determine an amount of damages that would fairly compensate them. Instead, they argue, the court should have fixed the damages at $1.45 million, the amount for which they settled the underlying case with the Jones estate. As a result of this claimed error, they argue that they are entitled to a new trial due to the prejudicial nature of the instruction, an *additur* of $975,000 ($475,000 plus $975,000 equals $1.45 million), or a conditional new trial limited to the issue of damages. We conclude that the trial court properly allowed the jury to determine the appropriate amount of damages to award.

In most spoliation-of-evidence cases cited by both parties, the party asserting the spoliation claim was also the plaintiff in the underlying litigation. The only case of which we are aware to consider spoliation claims by defendants to the underlying action is our

20

decision in *Stinnes Corp. v. Kerr-McGee Coal Corp.*, 309 Ill. App. 3d 707, 722 N.E.2d 1167 (1999). That case, like this one, involved a defendant who had settled the underlying action. We held that the settlement did not preclude a recovery for negligent spoliation of evidence; however, we did not have to consider what the proper measure of damages would be. *Stinnes Corp.*, 309 Ill. App. 3d at 718, 722 N.E.2d at 1175.

Courts that have considered the issue in the context of plaintiffs' claims for spoliation of evidence have struggled to find the appropriate measure of damages in those cases. Some have concluded that the appropriate measure of damages is the amount that the plaintiff would have recovered had they prevailed at a trial, multiplied by the probability of trial success. See *Petrik v. Monarch Printing Corp.*, 150 Ill. App. 3d 248, 260-61, 501 N.E.2d 1312, 1320 (1986) (citing *Smith v. Superior Court*, 151 Cal. App. 3d 491, 198 Cal. Rptr. 829 (1984)). Others have found it more appropriate to compensate plaintiffs for the full amount they would have recovered if the evidence had been available to them and they had prevailed at a trial. See *Petrik*, 150 Ill. App. 3d at 261, 501 N.E.2d at 1320. Although two panels of the First District Appellate Court have indicated in *dicta* that they would follow the latter method (*Schusse v. Pace Suburban Bus Division of the Regional Transportation Authority*, 334 Ill. App. 3d 960, 966, 779 N.E.2d 259, 264 (2002); *Fremont Casualty Insurance Co. v. Ace-Chicago Great Dane Corp.*, 317 Ill. App. 3d 67, 75, 739 N.E.2d 85, 91 (2000)), no Illinois case has squarely addressed the issue. The supreme court expressly declined to do so in *Boyd*. *Boyd*, 166 Ill. 2d at 198, 652 N.E.2d at 272.

The third-party plaintiffs argue that here the measure of damages is certain because we know exactly what they were required to pay in the underlying action: $1.45 million. To conclude that this is the proper measure of damages requires us to assume that, had the evidence not been lost, the third-party plaintiffs would not have settled with the Jones estate and likely would have won at a trial. This assumes too much. As Country Mutual points out,

Bernie Esser, the Ohio Casualty claims adjustor responsible for investigating the claim against O'Brien Tire in the underlying action, testified that he would not have recommended taking the case to a trial unless there was an expert witness who was "100 percent certain" that no one at O'Brien Tire was responsible for the accident. Esser further testified that, if there was an expert who could testify to a reasonable degree of engineering certainty that the wheel assembly was replaced after the truck left O'Brien Tire, he likely would have tried to settle for a lower amount. As a practical matter, the most accurate measure of damages would be the difference between the amount for which the case settled without the evidence and the amount upon which the jury finds it likely that the parties would have settled had the evidence existed allowing the defendant to present a stronger case. We thus conclude that the court properly instructed the jury regarding damages and that the third-party plaintiffs were not entitled to any of the requested relief.

## B. Willful and Wanton Spoliation

The third-party plaintiffs next argue that the court abused its discretion in denying them leave to amend their petition to add a claim for willful and wanton spoliation of evidence. We disagree.

Section 2-616 of the Code of Civil Procedure permits parties to amend their pleadings at any time before a final judgment is rendered "on just and reasonable terms". 735 ILCS 5/2-616(a) (West 2002). This statute is to be interpreted liberally so that cases may be decided on their merits rather than on the basis of flaws in the pleadings. The decision to permit or deny leave to amend pleadings is within the discretion of the trial court, and we will not reverse its decision absent an abuse of that discretion. *Trinity Bible Baptist Church v. Federal Kemper Insurance Co.*, 219 Ill. App. 3d 156, 163, 578 N.E.2d 1375, 1379 (1991). Courts are to consider the following factors when deciding whether to grant leave to amend pleadings: (1) whether the proposed amendment would cure a defect in the pleadings, (2)

whether other parties would sustain prejudice if the amendment is allowed, (3) whether the amendment is timely, and (4) whether the party had previous opportunities to amend the pleadings. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273, 586 N.E.2d 1211, 1215-16 (1992).

In the instant case, the proposed amendment added a cause of action rather than cured a defect in the pleadings. The first factor is thus inapplicable. Considering the timing and nature of the proposed amendment, we believe that the court acted within its discretion in denying the third-party plaintiffs' motion to amend. Whether Illinois courts will recognize a cause of action for willful and wanton or intentional spoliation of evidence remains an open question. See *Boyd*, 166 Ill. 2d at 201, 652 N.E.2d at 273. Thus, the third-party plaintiffs' motion for leave to amend its complaint sought to add a claim under a novel theory of law in this state merely one month before the trial. Allowing the amendment would have prejudiced Country Mutual by requiring it to defend against this novel claim with only a few weeks to prepare. Moreover, the proposed amendment was based on information obtained during a November 18, 2003, deposition of Country Mutual claims adjustor Jerry Krone. The third-party plaintiffs could have filed a motion for leave to amend sooner than January 9, 2004. Given the complexity and novelty of the issue involved and the proximity of the trial date, we do not believe a two-month delay in filing the request for leave to amend can be considered timely. We find no abuse of discretion.

## C. Prejudgment Interest

Finally, O'Brien Tire and Ohio Casualty contend that the trial court abused its discretion by denying their last-minute motion to amend their complaint to add a request for prejudgment interest. Prejudgment interest may be awarded if equitable considerations warrant it. Whether to award prejudgment interest is a matter within the sound discretion of the trial court. *In re Estate of Wernick*, 127 Ill. 2d 61, 87, 535 N.E.2d 876, 888 (1989). An

23

award of interest may be justified where a party breaches its fiduciary duty to another and, in so doing, retains a substantial amount of funds belonging to the other party (see *Neumann v. Neumann*, 334 Ill. App. 3d 305, 310, 777 N.E.2d 981, 985 (2002)) or retains funds belonging to the other party for a long period of time (see *In re Estate of Wernick*, 127 Ill. 2d at 88, 535 N.E.2d at 888). We do not believe that the trial court would have abused its discretion had it denied even a *timely* request for prejudgment interest. Thus, we conclude that it did not abuse its discretion by denying the third-party plaintiffs leave to amend their complaint two days before the trial to add a request the court had the discretion to deny.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment.


Affirmed.


GOLDENHERSH, J., concurs.


JUSTICE SPOMER, dissenting:

I respectfully dissent. Based on the Illinois Supreme Court's decision in *Dardeen v. Kuehling*, 213 Ill. 2d 329 (2004), I would find that, as a matter of law, Country Mutual owed no duty to preserve the wheel assembly at issue. The majority recognizes that, in light of *Dardeen*, the rationale underlying this court's holding in its disposition of the first appeal in this case "may no longer be valid, at least with respect to Country Mutual." Slip op. at 9; see *Jones v. O'Brien Tire & Battery Service Center, Inc.*, 322 Ill. App. 3d 418, 425 (2001). The majority then goes on to distinguish *Dardeen* from this case on the basis that the insurance adjuster in *Dardeen*, by instructing its insured not to preserve the evidence, did not voluntarily assume a duty to preserve the evidence, while the Country Mutual adjuster in this

24

case, by instructing the insured to preserve the evidence, did voluntarily assume a duty to preserve the evidence. I find this to be a distinction that, in addition to misinterpreting the supreme court's holding in *Dardeen*, is without merit and goes against logic.

While the Illinois Supreme Court has heretofore declined to specifically decide whether possession is required in every negligent spoliation case, I can conceive of no situation where an insurance company would have control over property owned by its insured absent possession or a possessory interest in the property. This is especially true where, as here, the truck at issue did not have collision coverage with Country Mutual such that the adjuster could potentially control the disposition of salvage parts upon the repair of the vehicle. Country Mutual only issued liability coverage to Sugarloaf and Macios. Consequently, I disagree with the majority's holding that, in instructing Macios to preserve the wheel assembly, Country Mutual exercised enough control to constitute a voluntary undertaking sufficient to impose a duty to preserve the wheel assembly. *Dardeen* specifically held that State Farm Fire and Casualty Company, who did nothing but answer a question posed by its insured, had neither possession nor control of the evidence and, therefore, owed the injured party no duty to preserve it. *Dardeen*, 213 Ill. 2d at 339. In the absence of a clear possessory interest on the part of the defendant insurance company (such as was the case of the defendant workers' compensation carrier in *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188 (1995), the defendant doctor in *Miller v. Gupta*, 174 Ill. 2d 120 (1996), the defendant employer in *Stinnes Corp. v. Kerr-McGee Coal Corp.*, 309 Ill. App. 3d 707 (1999), and the defendant employer in *Anderson v. Mack Trucks, Inc.*, 341 Ill. App. 3d 212 (2003)), the decision by an adjuster to instruct the owner of the evidence on whether to maintain or discard the evidence does not alter the amount of control the adjuster has over the potential evidence. The person receiving the instruction is still free to disregard that instruction and retain or discard the evidence. Accordingly, although the *Dardeen* court did not decide

25

whether possession is required, it is clear under *Dardeen* that Country Mutual did not have the requisite control over the evidence to impose a duty.

In addition, the majority's distinction goes against logic and would in effect turn public policy on its head. It defies common sense to say that by advising an insured not to preserve evidence, an insurance company can avoid liability (*Dardeen*, 213 Ill. 2d at 339), but by advising an insured to preserve evidence, an insurance company is assuming liability. The public policy implication of the majority's holding would be to encourage insurance companies to advise their insureds not to preserve evidence. This cannot be the intention of the Illinois Supreme Court's pronouncement in *Dardeen*.

Also troublesome is the majority's holding that "[o]nce Country Mutual undertook to preserve the evidence for its own benefit, this voluntary undertaking imposed a duty to continue to exercise due care to preserve the evidence for the benefit of *any other potential litigants*." (Emphasis added.) Slip op. at 11. Even if Country Mutual's instruction to its insured constituted a voluntary undertaking sufficient to impose a duty to preserve the wheel assembly, which, as explained above, is contrary to *Dardeen*, to hold that its duty would continue "for the benefit of any other potential litigants" is unlimited in time and scope and, consequently, unworkable. I do not find any Illinois law or law of any other jurisdiction that imposes such a continuing, limitless duty. This is, in part, because such a rule could conceivably prevent the repair of a vehicle involved in an accident until all the relevant statutes of limitations had run and would require an insurance company to foresee the actions of the injured party or his/her attorney, who may decide to sue some parties, even after the settlement of litigation against other parties, as was done in this case.

Finally, I disagree with the majority's conclusion that O'Brien Tire met its burden of proof of causation in this case. The supreme court made clear in *Boyd* that in order to prove causation, "[a] [spoliation] plaintiff must demonstrate *** that but for the defendant's loss

26

or destruction of the evidence, the plaintiff had a reasonable probability of succeeding in the underlying suit." *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 196 n.2 (1995). Here, even assuming that Country Mutual had a duty to avoid the loss of the wheel assembly, Ohio Casualty's expert, Wade Bartlett, testified that it was his opinion, to a reasonable degree of engineering certainty, that the lug nuts had been improperly tightened within a few miles before the accident. This means that in his opinion, O'Brien Tire was not responsible for the accident because it had replaced the tires approximately 360 miles before the accident.

Although upon further questioning Mr. Bartlett testified that his opinion was only based on 51% certainty, he testified that he could only come to a more definitive opinion if he was able to inspect the wheel assembly itself on the day of the accident or within several days after the accident. In order to come to a more definitive opinion several months after the accident, which is when O'Brien Tire first received notice of the accident, according to the evidence in the record, Mr. Bartlett testified that the wheel assembly would have to be preserved in a way that would prevent corrosion, which meant that it would have had to have been protected from oxygen and moisture by placement in an airtight bag in a humidity-controlled environment or sprayed with a clear laquer. Mr. Bartlett testified that he knew about this preservation requirement due to his work for 4½ years in a materials testing lab.

The clear implication of Mr. Bartlett's testimony is that the loss of the wheel assembly did not prejudice O'Brien Tire in its defense. In order for O'Brien Tire to have had any better proof that someone had improperly tightened the lug nuts closer to the time of the accident, O'Brien Tire would have had to have inspected the wheel assembly within days after the accident, and the record shows that O'Brien Tire did not have notice of the accident until several months later. Illinois law certainly does not impose a duty on an insurance company to notify a potential codefendant of its insured of an accident. Alternatively, in order for Mr. Bartlett to formulate a more certain opinion, the wheel assembly would have had to have

been preserved in the manner described by Mr. Bartlett, who is a mechanical engineer with expertise in materials testing.  If Country Mutual did have a duty to preserve the wheel assembly, it would be a duty to exercise ordinary care.  It would not be a duty to preserve the wheel assembly as would a mechanical engineer with expertise in materials testing.  Accordingly, the facts in this case were insufficient to prove causation under the "but for" standard enunciated in *Boyd*.

 For the foregoing reasons, I would reverse the judgment of the circuit court.